**Charles J. SCHINDLER, Appellant,**

v.

**J. W. THOMAS et al., Appellees.**

**No. 414.**

Court of Civil Appeals of Texas.

Corpus Christi.

Oct. 31, 1968.

Rehearing Denied Nov. 21, 1968.

Ellis L. Clark, Rockport, John H. Flinn, Sinton, for appellant.

William G. Burnett, Burnett, Burnett & Joseph, Sinton, Parker Ellzey, Lloyd, Lloyd, Dean & Ellzey, Alice, for appellees.

OPINION

NYE, Justice.

Charles J. Schindler, appellant, filed suit in an effort to cancel an oil, gas and mineral lease on his land. He contended in the trial court as well as here, that appellees' lease had terminated on November 1,

1965. The appellees defended contending that their lease was in full force and effect at the time they drilled a well on December 3, 1965; that a certain provision in the lease relied on by appellant as causing the termination of the lease, was ambiguous as a matter of law; therefore, they were permitted to introduce evidence explaining the ambiguity. The appellees filed a motion for summary judgment supported by a number of affidavits and depositions. The motion was answered by the appellant by counter-affidavits and deposition. The trial court granted appellees' summary judgment. The appellant assigns two points of error complaining (1) that as a matter of law the lease expired on November 1, 1965; and (2) that a fact issue is raised by appellant's counter-affidavits and depositions.

One of the appellees, Mrs. Lula M. Bancroft, a widow, was the owner of 147.70 acres of land which she sold to the appellant subject to the oil and gas lease in question. Several months prior to the sale of this land, Mrs. Bancroft instructed her attorney, Mr. Atlee McCampbell, to prepare the oil and gas lease for her. The lease was prepared on a printed form with certain portions crossed out and additions supplied by typewritten paragraphs. The lease was so prepared that the date for the commencement of the term, execution date, and the date for performance of the drilling obligation, could be inserted at a later time. As originally prepared the pertinent portions of the oil and gas lease were:

*First,* the beginning:

"Agreement, Made and entered into the ———— day of May, 1965 by and between * * *"

*Second,* after the legal description, the lease provided that:

"It is agreed that this lease shall remain in force for a term of six (6) years months from this date, said term being hereinafter called 'Primary Term,' * * *."

*Third,* following this provision was a typed in provision for payment of royalties and delayed rental provisions. The number 2 and number 3 paragraphs of the printed form lease were crossed out leaving only one sentence. This is the subject of this law suit. It states:

*"If no well be commenced on said land on or before the ———— day of November, 1965 this lease shall terminate as to both parties."* [1] The balance of this paragraph on the printed form was x'd out.

*Fourth,* at the end of the lease:

"In testimony whereof, I sign this ———— day of ————, A.D. 1965.

————————————————,"

Lula M. Bancroft

This same lease as finally executed and recorded with some blanks filled in shows that the pertinent portions were as follows:

First, in the beginning the parties had written in "4 day of ~~May~~ June 1965" (they crossed out the word "May" and inserted "June").

Second, The number 2 and 3 paragraphs to the lease were not changed nor was any date inserted; the last or fourth portion was as follows:

"In testimony whereof, I sign this 4th day of June, A. D. 1965.

/s/ Lula M. Bancroft".

Lula M. Bancroft

It is apparent that the draftsman had anticipated that the parties to the lease could fill in the correct time for the commencement of the lease, the commencement time for drilling the first well, and the date of execution. But it is also apparent that the lease agreement was so prepared that it was to be executed in "May 1965"—as that month was already typed in, and a six-month period after May 1965 would be November 1965, which was likewise typed in. Construing the lease in this manner

1. Emphasis supplied.

from its four corners, it is apparent that the parties intended that the drilling obligation was to be six months after execution of the lease.

Appellant contends that the sentence describing the drilling obligation when properly construed, required the appellees to commence a well on the *1st* day of November, 1965 and since they failed to do so on that date, the lease expired. The appellees argue that this sentence cannot be so construed as a matter of law; that the blank contained in the sentence of the drilling obligation makes this portion of the lease ambiguous and, therefore, they are entitled to explain the true intent of the parties by extrinsic evidence. This the appellees attempted to do by affidavits and deposition attached and filed with their motion for summary judgment.

The undisputed summary judgment evidence discloses that at the time Mrs. Bancroft sold the property to appellant she told him that the land was subject to an existing oil and gas lease. Her attorney, Mr. McCampbell, exhibited his office copy of the lease to appellant's attorney. The deed from Mrs. Bancroft to appellant contained a reservation of 1/16th royalty interest. The oil and gas lease in question was filed of record prior to the sale of the land to appellant.

On November 29, 1965 Flournoy Production Company, a working interest holder of the lease and one of the appellees, staked two locations for wells on appellant's land. On December 3rd a drilling rig was moved in on the land and the well was spudded in on that day. Operations continued from December 3rd without interruption until a well was completed and is now a gas producer capable of producing gas in paying quantities.

■ Appellant argues that "on or before the _____ day of November, 1965" means the 1st day of November of that year and since the drilling operations had not commenced on or before that date appellees are in effect trespassers. Appel-

lant relies upon the Supreme Court case of Lovenberg v. Henry, 104 Tex. 550, 140 S. W. 1079 (1911). In that case, a promissory note was extended by the maker long after its due date with this writing: "On or before 1904 I promise to pay within note. Galveston, August 20, 1900. (Signed) B. P. Cooper." A question of limitations was presented to the Court. The Court was then called upon to determine the meaning of, "on or before 1904". It held that in construing this endorsement, the Court seeks the intention of the parties from the instrument itself in the light of the circumstances of its execution, and in following this rule the Court determined that the year 1904 had its beginning with January 1st. Hence the note became due on January 1, 1904. We do not believe that this case is in point with the question before us. The oil and gas lease does not state that it would terminate if a well was not commenced on or before 1965, (as was the situation in the Lovenberg case) or even on or before November 1965. There was no blank in the note or endorsement for the Court to construe. The provision in the lease provides for the commencement of a well "on or before the _____ day of November 1965". This blank makes an ambiguity as a matter of law. This being so, it was proper for the trial court to consider extrinsic evidence to explain this ambiguity. 23 Tex.Jur.2d, § 350, and following.

■ It is settled law that the construction of a written instrument is a question of law and is one for the court. On the other hand if the written instrument is ambiguous, and it becomes necessary to resort to extrinsic evidence to ascertain the intent of the parties, the issue then becomes one of fact to be determined by the jury. However, in those cases of ambiguous instruments where the extrinsic parol evidence that is introduced, is undisputed as to the circumstances, the construction is then again a question of law for the court. Turner v. Montgomery, 293 S.W. 815 (Tex.Com.App.1927).

Mrs. Bancroft testified that she leased the property to appellee J. W. Thomas on June 4, 1965. She said that when she executed the lease it was her intention that the lessee, Thomas was to have six months within which to drill a well commencing on the date of the execution of the lease. This would have given the lessee until December 4, 1965, within which to commence the drilling of the first well. She stated that in executing the lease, she filled in the day of the month in the beginning sentence of the lease as "4", crossed out the word "May" (i. e. ~~May~~) and inserted the word "June". At the end of the lease, she said she filled in the date, "June 4, 1965". She stated that she made a notation of the drilling obligation date as "December 4, 1965" on her copy of the lease. Mrs. Bancroft further testified that she overlooked the printed form sentence in the center of the lease wherein the blank was located in front of the word "November, 1965".

Mr. W. N. Story, a lease broker, who handled the arrangements for the leasing of the land from Mrs. Bancroft as lessor to Mr. Thomas, lessee, confirms by affidavit the construction that the principals to the lease gave concerning the drilling obligation. He states that the parties agreed that the lease was a six-month lease, with the lessee having six months from the date of execution within which to drill a well.

Mr. McCampbell, attorney for Mrs. Bancroft, testified by deposition that he prepared the lease in his office and left the blank space in the first line so that the beginning date of the lease could be inserted subsequently. He left another blank space, the paragraph which usually is used to provide for payment of delayed rental. He stated that his reason for doing this was that the lease was to have a six-month primary term dating from the date of its execution and the lessee was to have six months before it would be required to commence drilling in order to retain the lease. He testified that the failure to make this clause read the "4 day of December 1965" was a mistake as it was the intention of both the lessor and the lessee that December 4, 1965 should be the date on or before which drilling must be commenced in order to hold the lease. All of this evidence is undisputed. Rule 166-A, Texas Rules of Civil Procedure provides that summary judgment shall be rendered if it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The provision of the lease which required the drilling of a well on or before a date certain is ambiguous. Resort to extrinsic evidence supplies the correct meaning of the time for the commencement of drilling, that is, six months after date of execution of the lease, on or before December 4, 1965. We hold the trial court properly granted summary judgment on the uncontroverted evidence explaining the provisions of the written instrument. Appellant's first point is overruled.

Appellees, by alternative plea, plead that if for any reason they had failed to meet any requirement necessary to maintain the lease, the appellant had waived any right to complain of such failure and appellant was estopped to contest the validity of such lease. Appellant's second point complains of the action of the trial court in granting the summary judgment on the ground of estoppel, because appellant raised a fact issue as to estoppel by his counter-affidavit and deposition. Although it is not necessary to discuss the alternative defense of estoppel since summary judgment was proper on the undisputed evidence explaining the drilling obligation, we believe that this defense also requires an affirmance of the trial court's judgment.

The appellees, by numerous affidavits and depositions, introduced evidence which showed a course of conduct by the appellant to the effect that he had recognized the lease, had failed to take affirmative action to stop appellees from drilling, and had in fact agreed that the lease had not terminated at the time the well was drilled.

A brief summary of the evidence from these affidavits and depositions reveals that appellant had had numerous conversations with a number of different witnesses concerning the moving in, drilling and completion of the well. Appellant told several witnesses, according to their affidavits, that the appellees had barely got in under the deadline to drill the well. In fact, appellant said, "Yes, seven hours before the deadline to be exact." Another witness testified that the appellant had told him that he did not want them to move the rig in on his land, but appellant knew that they had every right to do so. He noted to this witness that the well was spudded in at 5:00 p. m. on December 3rd and stated that had it been seven hours later he would not have allowed them to spud in.

Appellant mentioned in a conversation to another witness that had it rained as much at the well location as it had rained at his farm near Tivoli the appellees would never have gotten the rig in. Still another witness who was running logs on the well testified that he gave the appellant copies of the electric log, copies of the formation tests and copies of the core analysis. Appellant commented to this witness that since he could not stop appellees from drilling a well, and knowing that they were going to set pipe on the well anyway, he had decided to join them. One witness testified that appellant had told him two days after the rig had moved onto the well site that he, appellant, was really hoping that they would not move upon the well site by the deadline, December 4, 1965, because he had a better deal waiting for him if appellees lost the lease. The appellant told this witness that in case they did not make a well he did not want the hole plugged and abandoned. He inquired as to the best way to go back into the hole if it was left open. Another witness testified to the effect that the evening after they had perforated and completed the well the appellant bought a steak dinner for three employees of appellee drilling company. During the meal one of the employees did some figuring on appel-

lant's share of the revenue at different rates, both for oil and gas. Appellant and these employees also talked about future development of the lease. The next day the appellant drove one of the witnesses around the area and showed the witness gas connections from different companies that might be available for gas sales. All of these facts above set forth are either admitted by the appellant or are not controverted by the appellant in any way. The appellant in his deposition and affidavit, when confronted with these various statements, said in effect, that he did not recall making such statements.

We have reviewed all of appellant's summary judgment evidence, including his pleadings, answers and affidavits on file and his deposition. The most that can be said in regard to appellant's deposition and affidavit is that he did not want appellees to drill on his land. The appellant stated that he did not recall the various conversations that he had with the various witnesses and at one point denied having a particular conversation with one witness, but at no time or place did the appellant dispute any material fact. Many of appellant's statements were mere conclusions and would not have been admissible during a trial and therefore are insufficient. Crain v. Davis, 417 S.W.2d 53 (Tex.Sup.1967). We are not unmindful of the rule that if the uncontradicted evidence is from an interested witness such evidence can be considered as doing no more than raising an issue of fact, unless it is clear, direct and positive and there are no circumstances in the evidence tending to discredit or impeach such testimony. Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904 (1943). Here the appellant had the means of disputing the testimony of the various witnesses if same were not true, but failed to do so. Therefore, we must consider the uncontradicted evidence that was clear, direct and positive in favor of the appellees who moved for summary judgment. Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,

Tex., 391 S.W.2d 41 at 47. We hold that there is no genuine issue of fact that appellant did anything other than to recognize the validity of the lease and is therefore estopped by virtue of the undisputed facts from claiming the lease had terminated. Appellant's second point is overruled.

Appellant, in oral argument, announced that he had abandoned his appeal as to appellee Lula M. Bancroft. For this reason the judgment of the trial court is affirmed as to her. As to all other appellees, for the reasons stated in this opinion hereinabove, the judgment of the trial court is affirmed.

Affirmed.