The **AUSTIN AREA TEACHERS FEDERAL CREDIT UNION,**
Appellant,

v.

**FIRST CITY BANK–NORTHWEST HILLS, N.A.,** Appellee.

No. 3–91–136–CV.

Court of Appeals of Texas, Austin.

March 4, 1992.

Rehearing Overruled April 15, 1992.

Bruce H. Clark, Law Offices of Richey & Young, P.C., Austin, for appellant.

Richel Rivers, Randall C. Doubrava, Hilgers & Watkins, P.C., Austin, for appellee.

Before POWERS, JONES and SMITH, JJ.

SMITH, Justice.

A customer of Austin Area Teachers Federal Credit Union (the Credit Union) pledged her certificate of deposit at the Credit Union as collateral for her son's note to First City Bank–Northwest Hills, N.A. (First City). When the son defaulted, First City discovered the Credit Union had permitted its customer to withdraw her funds in contravention of the assignment agreement. First City sued the Credit Union for breach of contract. The Credit Union answered the assignment was invalid. The trial court found a valid contract and awarded First City damages of $16,591, plus prejudgment interest and attorney's fees.

The Credit Union raises five points of error on appeal that contain three substantive arguments: (1) the assignment was not valid or, in the alternative, (2) the pleadings do not support an award of damages for additional funds on deposit at the Credit Union and (3) there is insufficient evidence to support the award of attorney's fees. We will sustain the point of error that the pleadings do not support an award of dam-

ages exceeding the funds on deposit in the CD and remand to the trial court to enter judgment consistent with this holding.

## BACKGROUND

In 1988 John E. Lee executed a promissory note payable to First City. Mr. Lee's mother, Jo Helen Newman, agreed to pledge and assign to First City assets held in her CD at the Credit Union. She signed a document entitled "Assignment of Time/Savings Account" to this effect. The parties disagree as to the obligations created, and the assets referred to, in this document.

First City forwarded the assignment to the Credit Union for acknowledgement of First City's rights to Ms. Newman's assets in the event Mr. Lee defaulted. Bruce Davis, an employee of the Credit Union, acknowledged the assignment and returned it to First City. Mr. Davis, the Financial Services Supervisor of the Credit Union, was not an officer. Before making the loan to Mr. Lee, an administrative assistant at First City called the Credit Union to confirm the assignment document was in place.

When Mr. Lee subsequently defaulted on his loan and First City requested the Credit Union release Ms. Newman's CD, First City discovered she had already withdrawn the funds. First City then sued the Credit Union for payment of the monies in the CD allegedly pledged by Ms. Newman, together with interest and attorney's fees.

## STANDARD OF REVIEW

We will review all three challenges to First City's right to recover for breach of contract as challenges to the legal and factual sufficiency of the evidence that a valid assignment was ever created. In reviewing a no evidence challenge, we consider only the evidence and reasonable inferences drawn therefrom, which, when viewed in their most favorable light, support the jury verdict or court finding. The court must disregard all evidence and inferences to the contrary. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987); *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 593 (Tex.1986). If

there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Stafford*, 726 S.W.2d at 16. Any probative evidence supporting the finding will be sufficient to overrule the point of error. Robert W. Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361, 364 (1960).

In the alternative, the Credit Union complains that the finding of an enforceable agreement is factually insufficient. *Id.* In analyzing a great weight and preponderance point, we must consider and weigh all of the evidence. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). We may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.; see also*, W. St. John Garwood, *The Question of Insufficient Evidence on Appeal*, 30 Tex. L.Rev. 803 (1952).

## DISCUSSION

### *Existence of Contract*

Our review will focus on two documents the parties signed. The first document is entitled "Assignment of Time/Savings Account" and consists of four parts:

(1) the Assignment, signed by Ms. Newman, that transfers her interest in funds on deposit at the Credit Union, but does not designate the specific account or CD;

(2) the Notice of Assignment and Transfer, signed by an officer at First City;

(3) the Acknowledgment, signed by Mr. Davis of the Credit Union; and

(4) the Release, which was never executed.

The second document is an "Owner's Consent to Pledge" signed by Ms. Newman, in which she agreed to "hypothecate, pledge and deliver" to First City her CD at the Credit Union as collateral for Mr. Lee's loan.

In points of error one, two and three, the Credit Union contends the assignment is ineffective to assign any of Ms. Newman's funds on deposit at the Credit Union because:

(1) it fails to designate the specific account or CD assigned;

(2) the assignment purports to secure Ms. Newman's obligation to First City rather than Mr. Lee's indebtedness;

(3) the Credit Union official who signed the acknowledgment portion of the assignment had no actual or apparent authority to do so;

(4) the CD was evidenced by a certificate preventing assignment of the CD; and

(5) First City never had possession of the CD, thus its security interest was not properly perfected.

We address each of these points in turn.

First, the Credit Union argues the first portion of the assignment document fails to specify the account or CD number, rendering the assignment ambiguous and unenforceable due to its missing terms. The Credit Union reasons that if the assignment is void, any acknowledgment of that assignment is also void. The assignment reads:

### ASSIGNMENT OF TIME/SAVINGS ACCOUNT

[T]he undersigned ... hereby assign(s), set(s) over and transfer(s) to First City Bank–Northwest Hills, N.A. ... all right, title and interest of the undersigned in and to the account of the undersigned in *Austin Area Teachers Federal Credit Union* evidenced by account or passbook number(s) ____ and/or by certificate number(s) ____ all sums now or at any time hereafter on deposit therein ... for the purpose of securing payment of each and every debt ... the undersigned may now owe or at any time hereafter owe to the Depository Institution [First City]....

/s/ Jo Helen Newman

Even though the assignment leaves blank the account or CD number to be assigned, the CD number is easily ascertained by examining the second and third parts of the assignment document. The Notice of Assignment and Transfer and the Acknowledgement both refer to "the account of J.H. Newman # 7572[1] in this institution evidenced by account or passbook number(s) ____ and/or certificate number(s) *20*." Further, all three sections of the assignment document are on one piece of paper.

All three parts of the assignment document also appear to have been typed on the same typewriter, making it likely that the entire document was prepared before Ms. Newman signed the first part. Additionally, the pledge agreement Ms. Newman signed on the same day indicates her intent to pledge CD # 20 at the Credit Union to First City. Nor is there evidence that Ms. Newman had more than one CD at the Credit Union.

■ Based on the identification of CD # 20 in the other sections of the assignment document as well as in the pledge agreement, we conclude that the trial court properly held the contract was not void due to ambiguity. *Schindler v. Thomas*, 434 S.W.2d 187, 189 (Tex.Civ.App.1968, no writ) (extraneous evidence used to fill in the terms of a contract left blank).

■ Second, the Credit Union contends the assignment is invalid because it secured only the debts of Ms. Newman, not the debts of Mr. Lee. In essence, the Credit Union argues that First City used the wrong form, one designed for first-party— not third-party—assignments. It contends the form only assigned collateral for the purpose of securing Ms. Newman's indebtedness, and Ms. Newman was never indebted to First City.

The assignment document Ms. Newman signed states that the assignment secures "payment of each and every debt, liability or obligation of every type or description which any of the undersigned [Ms. Newman] may now or at any time hereafter owe [to First City]." This language is

---

**1.** # 7572 is not an account number. It refers to Ms. Newman's membership number at the Credit Union.

broad enough to encompass Ms. Newman's obligations to First City created by the default of her son. The moment Mr. Lee defaulted, Ms. Newman became obligated to First City under the assignment document and the pledge agreement.

In summary, despite the missing terms in the first part of the assignment and the use of the "wrong form," Ms. Newman was obligated to First City under the assignment. The trial court's implicit finding of a valid assignment is not against the great weight and preponderance of the evidence. We therefore overrule point of error three.

■■■ Third, the Credit Union argues that the assignment is invalid because Mr. Davis, the Credit Union employee who signed the Acknowledgment, had no actual or apparent authority to do so. Actual authority of an agent may arise as a result of conduct by the principal that intentionally or negligently allows the agent to believe he or she has been given actual authority to represent the principal. *Nat'l Cash Register Co. v. Wichita Frozen Food Locker, Inc.*, 172 S.W.2d 781, 786–787 (Tex. Civ.App.1943), *aff'd*, 142 Tex. 109, 176 S.W.2d 161 (Tex.1944). Evidence was introduced at trial concerning Mr. Davis's long-time work history, his familiarity with Credit Union procedures and most importantly, his belief that he was authorized to sign the assignment document. These facts provide adequate evidence to support the trial court's implicit finding that the Credit Union negligently led Mr. Davis to believe he had authority to sign the document.

■■■ The Credit Union argues First City did not inquire whether Mr. Davis was an officer and if it had done so, it would have discovered Mr. Davis had no authority to sign the acknowledgement of assignment. It relies on *FDIC v. Tex. Bank of Garland*, 783 S.W.2d 604 (Tex.App.1989, no writ), to argue that First City should have investigated Mr. Davis's authority more carefully. *Garland* involved the apparent authority of a bank's chief executive officer to sign a letter of credit. The court held that while the CEO did not have actual authority to sign the letter of credit, he did have apparent authority to sign the document. Among other factors, the court noted that the CEO was an officer of the bank, and that by appointing him to this position the bank impliedly authorized him to sign letters of credit. The Credit Union seeks to extend *Garland* to hold that a non-officer lacks apparent authority to execute certain documents. *Garland*, however, stands only for the proposition that a CEO-level officer has apparent authority to sign documents; it gives no guidance as to when a non-officer may have apparent authority, which is the issue in this case.

The trial court's implicit ruling that First City made reasonable efforts to confirm that the assignment was in place and reasonably relied on Mr. Davis's apparent authority to execute the acknowledgement is not against the great weight and preponderance of the evidence. Ensuring that proper personnel at the Credit Union execute documents should be the responsibility of the Credit Union, not First City. We overrule the Credit Union's first point of error.

■ Fourth, the Credit Union argues the CD was evidenced by a certificate stating that the CD could not be pledged, transferred or assigned. Although this argument is not articulated in any point of error, we will read the Credit Union's brief liberally so as to address this point in conjunction with the Credit Union's other arguments about the validity of the contract. *O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112, 114 (Tex.1976).

The Credit Union argues the CD was evidenced by a form marked with bold letters stating "Non-transferable." Therefore, it could not be assigned. We disagree. First, there is no evidence that the CD was in fact certificated. The Credit Union produced a blank form used to certificate deposits. However, it did not produce evidence that Ms. Newman's CD was actually certificated. Further, even if the CD was certificated, the Credit Union once again should be responsible for giving notice to First City that the CD was certificated, and thus not transferable. It cannot

acknowledge the assignment and then later claim the CD was not transferable because of wording that only the Credit Union knew was on its CD form.

■ Fifth, the Credit Union argues First City was not entitled to recover without actual possession of the CD. It contends that possession by First City is necessary to perfect its security interest. However, perfection of a security interest is not necessary to establish the Credit Union's breach of contract or to create an obligation on the part of Ms. Newman. It is only relevant when examining the priority of one creditor over another, an issue not present here. *See* Tex.Bus. & Com.Code Ann. § 9.203 (1991). We overrule the Credit Union's second point of error.

In conclusion, when all portions of the assignment document and pledge agreement are read together, the assignment was valid. This being true, the overriding fact is that the Credit Union clearly breached its duties under the assignment acknowledgment. The acknowledgment states "no account holder or assignee (except for your institution [First City]) shall have any right to make any withdrawal from said account...." By allowing Ms. Newman to withdraw her CD in contravention of this language, the Credit Union breached its contract with First City.

*First City's Rights to Additional $4000*

In the alternative to the contract arguments, the Credit Union contends that even if First City is entitled to recover funds on deposit in CD # 20, the pleadings and evidence do not support the court's award of an additional $4000 held in Ms. Newman's name at the Credit Union. When First City originally asked for the proceeds of the CD, the Credit Union stated Ms. Newman had already withdrawn the $11,000 CD, plus $1591 in accumulated interest. The Credit Union further stated it was willing to release $4000 in additional funds of Ms. Newman's to First City. However, nowhere in its pleadings does First City specifically seek these additional funds not held in CD # 20 which was the subject of its assignment from Ms. Newman. First City responds that it pleaded generally for

"such other and further relief to which Plaintiff may be justly entitled." Additionally, First City argues that the issue was tried by consent because the Credit Union did not object to certain testimony concerning the additional $4000.

Texas R.Civ.P.Ann. 67 (Supp.1992) governs trial by consent. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings...." *See La Marque Indep. Sch. Dist. v. Thompson*, 580 S.W.2d 670, 673 (Tex.Civ.App.1979, no writ) (as a general rule, failure to amend pleadings to conform to evidence does not affect result of trial on issues tried by consent).

■ Trial by consent is intended to apply only in exceptional cases where it clearly appears from the record that the parties tried the unpleaded issue. It should not be applied in doubtful cases. *Ranger Ins. Co. v. Robertson*, 707 S.W.2d 135, 142 (Tex. App.1986, writ ref'd n.r.e.). Further, it does not apply when the evidence on the non-pleaded matter is relevant to the issues pleaded because it would not be calculated to elicit an objection. *City of San Antonio v. Lopez*, 754 S.W.2d 749, 751 (Tex.App. 1988, writ denied).

The statement of facts contains three references to the $4000 in additional funds on deposit in Ms. Newman's name at the Credit Union. During her opening statement, the attorney for First City stated

that when John Lee defaulted on the indebtedness the bank called the collateral that Ms. Newman had pledged at the credit union, and the credit union had indicated that they had already paid out the CD in question. *There may be a question about some other monies that are in that account, as well.*

(emphasis added). Mr. Kline, Vice President of First City, testified on direct examination,

Q: And in addition to the certificate of deposit funds, were you notified that [there] were other funds on deposit

that Ms. Newman had at the credit union?

A: The credit union at the time said that these funds were gone, but *there was a small amount of funds available that they would be willing to remit to the bank.*

Q: *Was that amount $4,000?*

A: Approximately, yes, ma'am.

(emphasis added). On recross-examination, Mr. Kline further stated:

Q: Mr. Kline, you're not telling us now that you have any personal knowledge as to any balance in Account No. 7572 at the credit union, are you?

A: No sir. *The credit union had made an offer to send some funds that were available or that were in the account at the time we were making demand.*

(emphasis added).

The Credit Union contends this evidence is insufficient to invoke trial by consent. No objection was made to the evidence during the trial because the testimony related to other issues, such as the existence of the CD. A vague and brief reference to an approximate amount of $4000 is insufficient to show that First City was specifically seeking recovery of these funds.

No findings of fact or conclusions were requested or filed. In such cases, the trial court implies that all necessary findings of fact to support the judgment are present provided: "the proposition is one raised by the pleadings and supported by the evidence; and ... the trial judge's decision can be sustained on any reasonable theory that is consistent with the evidence and the applicable law, considering only the evidence favorable to the decision." *Franklin v. Donoho*, 774 S.W.2d 308, 311 (Tex. App.1989, no writ).

■ First City did not specifically plead for recovery of any additional funds not held as part of the pledged CD. Nor did Ms. Newman assign to First City all of the funds that she may ever have on deposit in any account at the Credit Union. She only pledged and assigned CD # 20. Therefore, the Credit Union is only liable for its failure to deliver to First City the funds on deposit in CD # 20. The trial court's award of the additional monies cannot be sustained under trial by consent on any reasonable theory that is consistent with the evidence and applicable law. We sustain the Credit Union's fourth point of error and conclude that First City is only entitled to recover the $12,591 that was on deposit in CD # 20.

*Attorney's Fees*

In its fifth point of error, the Credit Union argues that First City is not entitled to attorney's fees because it failed to detail the nature of the services provided by the attorneys and to allocate their expenses between the causes of action prosecuted against each defendant.

■ The award of attorney's fees is governed by Tex.Civ.Prac. & Rem.Code Ann. § 38.001 et seq. (1986). "It is presumed that the usual and customary attorney's fees ... are reasonable. The presumption may be rebutted." *Id. at* § 38.-003. The court may also "take judicial notice of usual and customary attorney's fees and of the contents of the case file without receiving further evidence in ... a proceeding before the court...." Id. at 38.004. Finally, the testimony of non-attorneys may be considered when awarding attorney's fees. *Gill Sav. Ass'n v. Chair King, Inc.*, 797 S.W.2d 31, 32 (Tex.App. 1990, no writ).

■ First City initially sued both the Credit Union and Ms. Newman. However, the trial court severed the suit against Ms. Newman and First City pursued both defendants in separate lawsuits. Dan Kline, Senior Vice President of First City, provided the following testimony as to the legal expenses incurred in the lawsuit against the Credit Union:

Q: In connection with your work at First City Bank, have you had the opportunity to work with attorneys in an effort to collect upon amounts due to the bank by borrowers?

A: Yes, ma'am.

**802**

Q: And what, in your estimation and based on your experience, would be a reasonable and necessary attorney fee for the work done on behalf of the bank in connection with this case against the Credit Union?

A: Approximately, I would say, 3 to $4,000.

We hold that the trial court did not abuse its discretion in awarding attorney's fees of $4000 based on this testimony. The Credit Union's fifth point of error is overruled.

### CONCLUSION

Because the pleadings do not support an award to First City of damages exceeding the $12,591 on deposit in CD # 20, plus prejudgment interest and attorney's fees, we reverse the judgment and remand this cause to the trial court for entry of judgment consistent with this opinion.