

# NUMBER 13-09-00301-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

LAZARO CRUZ FARIAS ,                                              Appellant,

v.

ANTONIO VERA ,                                                   Appellee.

### On appeal from the 139th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Garza
### Memorandum Opinion by Justice Garza

Appellant Lazaro Cruz Farias files this appeal on a trespass to try title case.  By his first issue, Farias argues that the trial court erred when it failed to file findings of fact and conclusions of law after it rendered judgment for appellee Antonio Vera.  By his second issue, Farias contends that the evidence was factually insufficient to support a finding that Vera was a bona fide purchaser for value.  We affirm.

## I. BACKGROUND

The property at issue in this case, described as 3317 Barbara Lane, Lot 6, Santa Cruz Estates, Hidalgo County, Texas (the "Barbara Home"), was originally owned by Cary Bennett Glenn.  The property consisted of a mobile home and its surrounding land.  On September 27, 2001, Glenn signed a contract for deed with Farias for the Barbara Home.

The contract for deed provided that Farias would pay Glenn five hundred dollars per month for ten months, beginning on October 1, 2001, after which Farias would pay three hundred dollars per month to Glenn for nine years and two months until October 1, 2011. At that time, Glenn would sign the property over to Farias "free and clear of all encumbrances, by good and marketable title, with full possession to said property . . . ." The contract for deed also required Farias to pay the property taxes and insurance for the Barbara Home while he was in possession of the property. Neither Glenn nor Farias filed this contract for deed at the Hidalgo County courthouse.

According to Glenn, Farias stopped making his monthly payments in the summer of 2003. At this time, Glenn also learned that Farias had not paid the property taxes on the Barbara Home in approximately three years, nearly forcing the property into foreclosure with the county. The record reflects that Glenn attempted to contact Farias several times to see if Farias could make the overdue payments but was unable to reach him. Finally, on August 25, 2003, Glenn sent Farias a letter stating that Farias had breached the contract for deed and giving Farias ninety days written notice to vacate the premises.[1] Glenn testified that Farias told him that he would move: "Mr. Farias had told me, he goes, 'I'll move out.' He goes, 'I've got another place to go to'. . . ."

To prepare the Barbara Home for re-sale, Glenn paid the outstanding utility bills, insurance payments, and the property tax lien, and then advertised the property in the local newspaper. Vera testified that, in October of 2003, he saw the ad for the Barbara Home in the newspaper, went to visit the property and saw "no activity," and then called Glenn to inquire about its possible purchase. Glenn and Vera soon began discussions regarding

---

[1] The letter, dated August 25, 2003, stated the following:

Dear Larry Farias,

After repeated attempts to contact [you] by leaving messages on your door, I have yet to hear from you. You still have not made an attempt to make any payments on the house in the past 90 days. Since this situation has gone for over 90 days this contract has gone into default. Our original contract stated that you would pay property taxes, taxes are now about 3 years behind, and that's another fault on your part of the contract. You now have 90 days from receipt of letter to vacate the premises.

Thank you, Bennett Glenn

sale of the Barbara Home. Although Glenn told Vera that the Barbara Home had "renters" (Farias and his wife) and that the renters intended to move, the evidence is unclear as to whether Glenn told Vera about his contract for deed with Farias.[2] Vera ultimately purchased the Barbara Home for $20,000.00 on October 9, 2003 by signing a warranty deed, which he promptly recorded at the Hidalgo County courthouse. Vera also obtained a title insurance policy when he purchased the property, which did not reflect the contract for deed between Glenn and Farias.

When Farias failed to move out, Vera visited the property with a police officer to remove Farias from the premises. At that time, Farias refused to leave the property and showed Vera his contract for deed. Vera testified that this was the first time he learned about the contract for deed between Glenn and Farias for the Barbara Home. The record reflects that Farias lived at the Barbara Home since October of 2003 without paying rent, mortgage, or property taxes.[3] In an effort to remove the cloud from the title and settle this dispute, Vera filed this trespass to try title suit.

A bench trial was held, and the trial court ruled in Vera's favor. Farias subsequently filed this appeal.

## II. DISCUSSION

### A. Findings of Fact and Conclusions of Law

Farias argues that the trial court erred when it failed to file findings of fact and conclusions of law after it rendered judgment for Vera and that this failure was harmful to Farias. Texas Rule of Civil Procedure 296 provides that:

> In any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law. Such request shall be entitled "Request for Findings of Fact and Conclusions of Law" and shall be filed within twenty days after judgment is signed with the clerk of the court, who shall immediately call such request to the attention of the judge who tried the case. The party making the request shall serve it on all other parties in accordance with Rule 21a.

---

[2] During the trial on the merits, Farias's counsel asked Glenn, "is it true you didn't tell Mr. Vera . . . that you had a contract for deed?", to which Glenn replied, "I do not remember whether I actually told him or not. I do not remember that."

[3] Vera testified that he has consistently paid the property taxes on the Barbara Home since 2003.

TEX. R. CIV. P. 296. Farias requested findings of fact and conclusions of law pursuant to rule 296 on October 2, 2008. When the trial court failed to respond, Farias filed a subsequent request pursuant to Texas Rule of Civil Procedure 297, which states that, "[i]f the court fails to file timely findings of fact and conclusions of law, the party making the request shall. . . file. . . a 'Notice of Past Due Findings of Fact and Conclusions of Law.'" *Id*. at rule 297. The trial court did not respond to this request either.

A trial court's duty to file findings of fact and conclusions of law is mandatory pursuant to a rule 296 request and a rule 297 reminder for the same. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996); *Cherne Indus. Inc. v. Magallanes*, 763 S.W.2d 768, 771 (Tex. 1989). The failure of a court to provide its findings and conclusions "is presumed harmful, unless the record before the appellate court affirmatively demonstrates that the party complaining of the failure to file findings of fact has suffered no injury." *Tenery*, 932 S.W.2d at 30; *see also Nationwide Capital Funding, Inc. v. Epps*, No. 13-04-308-CV, 2006 Tex. App. LEXIS 3152, *6-7 (Tex. App.–Corpus Christi 2006, no pet.) (mem. op.). "The test for determining harm in such a case is whether the circumstances of the particular case would force an appellant to guess the reason or reasons that the trial court ruled against it." *Sheldon Pollack Corp. v. Pioneer Concrete Co.*, 765 S.W.2d 843, 845 (Tex. App.–Dallas 1989, writ denied); *see also Nationwide*, 2006 Tex. App. LEXIS 3152 at *6-7. In other words, the error is harmful if it prevents an appellant from properly presenting its case to an appellate court. *See* TEX. R. APP. P. 44.1.

We conclude that Farias suffered no harm by the trial court's failure to file findings of fact and conclusions of law. First, the trial court's judgment clearly sets forth the reasoning behind its ruling. The Final Judgment, in its entirety, states as follows:

> On October 07, 2008, this case was called for trial. Plaintiff Antonio Vera, appeard [sic] in person and through his attorney announced ready for trial. Defendant, Lazaro Cruz Farias, appeared in person and through his attorney and announced ready for trial.
>
> All matters in controversy, legal and factual, were submitted to the Court for its determination. The Court heard the evidence and arguments of counsel and hereby RENDERS Judgment for Antonio Vera, Plaintiff.

4

This is a suit for trespass to try title on property described as:

> All of Lot 6, Santa Cruz Estates, Hidalgo County,
> Texas, according to the map recorded in volume 21,
> page 13, map records in the County Clerk of Hidalgo
> County, Texas.

The subject property is also described as: 3317 Barbara Lane, Edinburg, Texas.

Plaintiff, Antonio Vera purchased the property on or about October 09, 2003 under warranty deed numbered 1256727. The deed was filed on or about October 20, 2003. There is no interruption in the chain of title between the Grantor, Cary Bennett Glenn, and Grantee-and [sic] Plaintiff, Antonio Vera. Antonio Vera was a bona fide purchaser for value of the property.

IT IS DECREED that Antonio Vera recover from Lazario [sic] Cruz Farias the above described property and real estate and Lazario [sic] Cruz Farias is ORDERED dispossessed of the property and real estate. This property is described as:

> All of Lot 6, Santa Cruz Estates, Hidalgo County,
> Texas, according to the map recorded in volume 21,
> page 13, map records in the County Clerk of Hidalgo
> County, Texas

The subject property is also described as: 3317 Barbara Lane, Edinburg, Texas.

All costs are adjudged against the party incurring same.

This judgment is final and disposes of all claims and parties and is appealable.

The Court ORDERS that Lazaro Cruz Farias has no legal or equitable interest in the real estate property described above and orders execution to issue for this judgment.

The judgment plainly explains the trial court's reasoning in ruling for Vera: it describes the contested property at issue, discusses the recorded chain of title, and explains why Vera is a bona fide purchaser for value. "This ruling reveals the ground upon which the trial court based its judgment, and it allows us to review the alleged trial errors." *Humphrey v. Camelot Retirement Cmty.*, 893 S.W.2d 55, 61-62 (Tex. App.–Corpus Christi 1994, no pet.).[4]

---

[4] We note that we dealt with a similar issue in *Salinas v. Beaudrie*. 960 S.W.2d 314 (Tex. App.–Corpus Christi 1997, no pet.) (Seerden, J., concurring). In *Salinas*, we strictly interpreted Rule 299a, which states that "[f]indings of fact shall not be recited in a judgment . . .", and held that "we [could] not

5

Second, the record before us reflects that Farias was party to a bench trial wherein the trial judge listened to witnesses and at one point stated that "there was nobody in" the courthouse records for the Barbara Home when the title company conducted its search on Vera's behalf. *See Twist v. Flores*, No. 13-03-171-CV, 2010 Tex. App. LEXIS 3607, at *11-12 (Tex. App.–Corpus Christi May 13, 2010, no pet. h.) (mem. op.) (noting that no harm existed where the trial court did not issue findings of fact and conclusions of law because the trial court held a lengthy hearing, allowed each party to question witnesses, and informed the appellant that he "failed to follow the rules and follow through."). Farias did not have to "guess the reason or reasons that the trial court ruled against" him. *Id*. at 61 (*citing Sheldon Pollack Corp.*, 765 S.W.2d at 845). In fact, it is obvious that Farias understood the basis of the trial court's decision because he briefed it as his second issue in his appellate brief. Accordingly, we overrule Farias's first issue.

## B. Bona Fide Purchaser for Value

In his second issue, Farias argues that there is factually insufficient evidence to support the conclusion that Vera was a bona fide purchaser for value.

### 1. Standard of Review

"When the trial court acts as a fact[-]finder, its findings are reviewed under legal and factual sufficiency standards." *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000). If no findings of fact are filed, the trial court's judgment necessarily implies all findings of fact to support it. *Schoeffler v. Denton,* 813 S.W.2d 742, 745 (Tex. App.–Houston [14th Dist.] 1991, no writ). "The trial judge's decision can be sustained on any reasonable theory that is consistent with the evidence and the applicable law, considering only the evidence favorable to the decision." *Austin Area Teachers Fed. Credit Union v. First City Bank—NW*

---

consider the trial court's findings that [were] contained within the body of the judgment." *Id*. at 317. However, we went on to note that we "examined the findings recited in the trial court's judgment and we determine[d] them to be supported by the evidence in the record." *Id*. at 317n.5. We have done the same here. In this case, the trial court issued no findings of fact, but the record supported and explained the trial court's ruling.

Justice Seerden's concurrence in *Salinas* should be highlighted, as well. Justice Seerden held that he "would hold that we may consider finding within the body of the judgment, even if those findings are not in compliance with Texas Rule of Civil Procedure 299a, so long as they are not in conflict with separately-filed findings that are in compliance with the rules." *Id*. at 320.

*Hills, N.A.*, 825 S.W.2d 795, 801 (Tex. App.–Austin 1992, writ denied); *Brodhead v. Dodgin*, 824 S.W.2d 616, 620 (Tex. App.–Austin 1991, writ denied). "If there is evidence to support the implied finding of fact, the appellate court must uphold the judgment on any theory of law applicable to the case." *Giangrosso v. Crosley*, 840 S.W.2d 765, 769 (Tex. App.–Houston [1st Dist.] 1992, no writ).

### 2.  Applicable Law

Texas law favors recording acts because recording makes title information available to all interested persons. *Richland Hills v. Bertelsen*, 724 S.W.2d 428, 429 (Tex. App.–Fort Worth 1987, writ denied). By recording a conveyance of real property, a property owner protects his or her own rights in addition to the rights of "others who may afterwards seek to acquire an interest in the same property." *Id*. at 430 (*citing Anderson v. Barnwell*, 52 S.W.2d 96, 101 (Tex. Civ. App.–Texarkana 1932), *aff'd*, 126 Tex. 182, 86 S.W.2d 41 (1935)).

Here, neither Glenn nor Farias recorded their contract for deed on the Barbara Home. Because of this lack of notice and claimed lack of proof that Farias had any ownership rights to the property, Vera alleged that he was a bona fide purchaser for value. A bona fide purchaser for value "acquires property in good faith, for value, and without notice of any third-party claim or interest." *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001). This law is codified in Texas Property Code section 13.001, which provides that:

> (a) A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.
>
> (b) The unrecorded instrument is binding on a party to the instrument, on the party's heirs, and on a subsequent purchaser who does not pay a valuable consideration or who has notice of the instrument.

TEX. PROP. CODE ANN. § 13.001(a), (b) (Vernon 2004). Being a bona fide purchaser for value is an affirmative defense to a title dispute. *Madison,* 39 S.W.3d at 606. However, actual or constructive notice can defeat the protection otherwise afforded to bona fide

purchasers for value. *Id.* Actual notice "literally means express or positive personal information or knowledge directly communicated to the person to be affected." *Flack v. First Nat'l Bank of Dalhart, Tex.*, 226 S.W.2d 628, 631 (Tex. 1950). Constructive notice consists of "open, visible, and unequivocal acts of occupancy in their nature referable to exclusive dominion over the property, sufficient upon observation of to put an intending purchaser on inquiry as to the rights of such possessor." *Strong v. Strong*, 98 S.W.2d 346, 350 (Tex. 1936); *Madison*, 39 S.W.3d at 606.

Farias disputes Vera's bona fide purchaser status. He contends that Vera had "notice" of a third party claim or interest when Glenn told him about the Barbara Home "renters." In addition, Farias points out that Glenn may even have told Vera about his contract for deed with Farias, although Vera denies this. These combined facts, Farias argues, should have constituted notice that would defeat Vera's bona fide purchaser status. We must determine, therefore, whether there existed factually sufficient evidence in the record to demonstrate that Vera had actual or constructive notice of Farias's possession of the Barbara Home.

The Texas Supreme Court dealt with similar facts in *Madison v. Gordon*. 39 S.W.3d at 604. In *Madison*, Ronald Gordon owned a four-plex rental property; he lived in one unit while renting the others. *Id.* at 605. In 1991, Gordon was arrested and placed in jail. *Id.* To obtain a bail bond, he signed a warranty deed conveying this rental property to a bail bondsman, which the bondsman properly recorded. *Id.* Gordon simultaneously hired a lawyer named Alton Williams to represent him. *Id.* A year later, the bondsman conveyed the property to Williams, who recorded the deed. When Williams was "in need of cash and unable to secure a loan," his fiancée, Anna Madison, purchased the property from him by securing a bank loan. *Id.* The bank recorded the note and the conveyance. *Id.* Gordon, who lived on the property throughout these conveyances, later sued the bail bondsman, Madison, Williams, and Williams's lending bank to recover title on the rental property. *Gordon*, 39 S.W.3d at 605. Gordon argued that Madison could not assert status as a "bona fide purchaser for value" because she had actual and/or constructive notice of his

8

claim to the property. *Id*.

In her motion for summary judgment, Madison argued that she was a bona fide purchaser because she "acquired the property in good faith, for value, and without notice, actual or constructive, of any third-party claim or interest." *Id*. at 606. She claimed that her fiancé told her nothing about Gordon or his continued residency in one of the units, even though Gordon was his former client. *Id*. Furthermore, she asserted that "although Gordon has continued living on the property since 1988, he last claimed the property as his homestead and last paid property taxes in 1991–the year he transferred the property to the bondsman." *Id*. The trial court granted Madison's summary judgment; however, an appellate court reversed this ruling and held that "Madison was not a bona fide purchaser because Gordon's [continued possession of one of the rental units] gave Madison constructive notice of [Gordon's] claim." *Gordon v. Madison*, 9 S.W.3d 476, 479 (Tex. App.–Houston [1st Dist.] 2000), *reversed by Madison v. Gordon*, 39 S.W.3d 604 (Tex. 2001).

In its opinion reversing the appellate court, the Texas Supreme Court ruled that "Gordon's possession as a tenant . . . did not satisfy the criteria necessary to give Madison constructive notice. His possession was neither exclusive nor unequivocal. As rental property, one would expect occupants on the property." *Madison*, 39 S.W.3d at 607. Possession was not unequivocal because it was "compatible with another's ownership assertion." *Id*. Furthermore,

> Ambiguous or equivocal possession which may appear subservient or attributable to the possession of the holder of the legal title is not sufficiently indicative of ownership to impute notice as a matter of law of the unrecorded rights of such possessor.

*Id*.

Similarly, in this case, it did not appear that Vera had actual or constructive notice of Farias's claim. With respect to actual notice, Glenn testified that he represented to Vera that Farias rented the Barbara Home and intended to move soon. In addition, the contract for deed between Glenn and Farias was never recorded and did not appear in the title

insurance policy Vera purchased. Furthermore, Vera testified that he did not know about the contract for deed until after he purchased the property and attempted to evict Farias from the premises. Accordingly, we find that there was factually sufficient evidence to show that Vera did not have "actual notice" because Vera did not have "express or positive personal information" regarding Farias's alleged claim to the land. *See Flack*, 226 S.W.2d at 631.

Regarding whether Vera had constructive notice, we find that the evidence did not reflect that Farias's possession of the Barbara Home was "open, visible, exclusive, or unequivocal." *Strong*, 98 S.W.2d at 350; *Madison*, 39 S.W.3d at 606. If Vera was told that Farias was a renter, Vera would expect to see an occupant on the premises. Farias's possession of the Barbara Home was not unequivocal because it was "compatible with [Glenn's] ownership assertion." *Madison*, 39 S.W.3d at 607. Furthermore, we note that even if this knowledge did raise a duty of inquiry on Vera's behalf to inquire about Farias's possessory rights, Vera stated that when he visited the property, he noted "no activity." Thus, despite his inquiry, he still would not have constructive notice of Farias's claim.

Accordingly, we find that there is factually sufficient evidence to "support the implied finding of fact" that Vera was a bona fide purchaser for value. *Giangrosso*, 840 S.W.2d at 769. Considering only the evidence favorable to the trial court's judgment, we conclude that awarding ownership to Vera due to his bona fide purchaser status was reasonable in light of the evidence and applicable law supporting this ruling. *Id*.; *Austin Area Teachers*, 825 S.W.2d at 801. We overrule Farias's second point.

### III. CONCLUSION

We affirm the trial court's decision.

_____
DORI CONTRERAS GARZA,
Justice

Delivered and filed the
17th day of June, 2010.

10