**W. A. KELLY, Appellant,**

**v.**

**Herbert Franklin HEIMER et al., Appellees.**

**No. 13318.**

Court of Civil Appeals of Texas.

San Antonio.

March 26, 1958.

Rehearing Denied April 23, 1958.

Henry Lee Taylor, Roscoe Johnson, San Antonio, for appellant.

Foster, Lewis, Langley & Goode, Wurzbach & Camp, San Antonio, for appellees.

BARROW, Justice.

This suit was filed by appellant, W. A. Kelly, d/b/a Kelly Construction Company, against Herbert Franklin Heimer, Alma E. Heimer, Alida Emelia Kaderli and her husband, Ottomar Kaderli, hereinafter called the Heimers, Hill Country Estates, Inc., with G. E. Melliff as president, and other defendants who are not concerned with this appeal.

Appellant's suit was based upon a written contract between himself and Hill Country Estates by the terms of which appellant was to make certain improvements, such as grading and street paving, on a certain plated subdivision, containing 260.40 acres of land in Bexar County, Texas, known as "Shady Oaks Subdivision," and was to receive as compensation certain amounts therein specified.

After the trial without a jury, the court rendered judgment for appellant against Hill Country Estates, Inc., for the sum of $30,277.67, and attorney's fees in the sum of $7,569.42, with interest and costs, but denied any recovery against the Heimers and the other defendants. This appeal is only from the judgment in favor of the Heimers. The trial court filed findings of fact and conclusions of law.

Appellant's claim against the Heimers is based upon his contention that Hill Country Estates, Inc., and the Heimers were partners in the undertaking to subdivide and improve the tract of land in question, and that the Heimers are estopped by their conduct to deny the partnership.

The record shows that the Heimers, on and prior to May 23, 1953, were joint owners, among themselves with none others, of 253.79 acres of land, and that on said date and at all times thereafter their title to said tract of land, described by metes and bounds, was set forth in and upon the Deed Records of Bexar County, Texas.

The record further shows that on May 23, 1953, the said Heimers entered into a written option agreement with Gerald E. Melliff, covering the hereinabove mentioned 253.79 acres of land, which provided by its terms, among other things that are not material to the disposition of this cause, as follows:

"(a) That the said Gerald E. Melliff was given the exclusive right to purchase from the 'Heimers' the said 253.79 acres of land on the terms and within the time set forth in the said option agreement;

"(b) That the said Gerald E. Melliff at his own cost and expense agreed to prepare, or cause to be prepared, a plat of the said 253.79 acres of land for subdivision into lots with proper provision for easements or streets for ingress and egress to each of the said lots that would be designated and delineated on the said plat, that the said plat would be submitted to the 'Heimers' before it was filed for record for their approval, together with

the building restrictions pertaining to the said lots and to the subdivision thereof;

"(c) That it was provided in the said option agreement that a schedule of the prices that the said Gerald E. Melliff would offer the said lots for sale to the public under the terms of the said option agreement would be prepared by the said Gerald E. Melliff so that the said 253.79 acres of land would net the 'Heimers' the cash price that the said Gerald E. Melliff had agreed to pay for the said 253.79 acres of land, and this schedule would be submitted to the 'Heimers' by the said Gerald E. Melliff for their approval;

"(d) That it was provided in the said option agreement that certain improvements would be made on and to the said 253.79 acres of land at the sole cost and expense of the said Gerald E. Melliff, and that the said Gerald E. Melliff would at his own cost and expense gravel or macadamize, according to the specifications of the County Engineer of Bexar County, Texas, all the streets shown and designated on the plat of the said 253.79 acres of land, and that this work would be completed in a reasonable time from the date of the said option agreement;

"(e) That it was provided in the said option agreement that the 'Heimers' would execute and deliver to each purchaser of the lots designated or delineated on the plat of the 253.79 acres of land that were procured by the said Gerald E. Melliff by virtue of and in accordance with the terms of his said option agreement earnest money contracts, whereby the 'Heimers' would contract to sell and convey to the said prospective purchasers any of the lots designated or delineated on the said plat of the said 253.79 acres of land in accordance with the terms and provisions of the said option agreement;

"(f) That it was provided in the said option agreement that, in the event the said Gerald E. Melliff made default in any payment of money to the 'Heimers' as provided in the said option agreement, or in case the said Gerald E. Melliff failed to perform any of the agreements contained in the said option agreement, the said option agreement, at the option of the 'Heimers,' would become null and void and of no force and effect, and that all rights of the said Gerald E. Melliff, or his assigns, would be cancelled and the 'Heimers' would thereby be released from all obligations on their part thereunder, and that any and all improvements made, or caused to have been made, under the terms and provisions of the said option agreement, by the said Gerald E. Melliff to or on the said 253.79 acres of land herein involved would become the property of the 'Heimers' free from any and all claims and liens as liquidated damages for the failure of the said Gerald E. Melliff to comply with the terms of the said option agreement;

"(g) That it was provided in the said option agreement that it was distinctly understood and agreed by the said 'Heimers' and the said Gerald E. Melliff that the said option agreement embraced the full and complete agreement of the said parties thereto and that no statement, remark, agreement or understanding, oral or written, not contained in the said option agreement would be recognized or enforced. And that nothing in the said option agreement should be deemed, or construed, to create an agreement of partnership, or of joint venture, between the 'Heimers' and the said Gerald E. Melliff, nor should the said Gerald E. Melliff at any time, or times, use the name, or credit, of the said 'Heimers,' or of either of them, in purchasing, contracting for, or attempting to purchase, or contract for, any supplies, or

work, or labor, or improvements of any kind or nature, or thing, whatsoever, and that nothing in the said option agreement should be deemed, or construed, to create the relation of principal and agent between the said 'Heimers' and the said Gerald E. Melliff, it being the true intent and purpose of the said option agreement that the said Gerald E. Melliff was only given an exclusive option to the extent and upon the terms, provisions and conditions set forth in the said option agreement, and not otherwise, to purchase from the said 'Heimers' the said 253.79 acres of land described in the said option agreement at the net price therefor to the 'Heimers' as set forth in the said option agreement."

That said option was assigned by G. E. Melliff to Hill Country Estates, Inc., and that on or about June 3, 1953, Hill Country Estates acquired title to 6.61 acres of land by deed filed for record on June 5, 1953, and duly recorded. That the tract consisting of the Heimers' 253.79 acres, covered by said option, and the 6.61 acres aforesaid, was subdivided under the direction of G. E. Melliff, as president of Hill Country Estates, Inc., into lots and streets, and the plat thereof prepared, known as "Shady Oaks Subdivision." That said plat was acknowledged by the Heimers as "part owners" of the land involved, and also by Hill Country Estates, Inc., as "part owners", and said plat was filed for record on or about December 15, 1953. Said plat subdivided the above mentioned land into 177 lots, and the Heimers and Hill Country Estates, Inc., executed and approved a building restrictions instrument, as provided for in the above mentioned option agreement.

That on or before August 7, 1953, said G. E. Melliff requested appellant, W. A. Kelly, to submit his bid for developing the streets in said subdivision. That during the time the contemplated improvements were being discussed between said Melliff and appellant, Melliff informed appellant

of his option agreement with the Heimers, and on August 7, 1953, appellant submitted his bid to Melliff, covering the contemplated improvements. That sometime before November 1, 1953, said G. E. Melliff delivered to appellant the plat of said subdivision, together with the certificates and acknowledgments reciting that the Heimers and Hill Country Estates, Inc., were part owners of the land shown on the plat.

That on November 30, 1953, Hill Country Estates, Inc., by letter of that date, signed by G. E. Melliff as president, submitted a counter-proposal to appellant, covering the street construction on said subdivision, which counter-proposal was on said November 30, 1953, accepted by appellant.

That the appellant did not, either before or at the time of entering into said contract with Hill Country Estates, Inc., talk to or discuss with the Heimers the matter of entering into said contract or the work to be done thereunder, nor did said G. E. Melliff at any time inform or represent to appellant that the Heimers would pay the cost of said work, or any part thereof.

The Heimers did not at any time pay or promise to pay appellant for any of said improvements, nor did the Heimers at any time say anything or do anything that would be considered a ratification by them of said contract between the appellant and Hill Country Estates, Inc. The Heimers did not at any time authorize said Melliff to act for them as their agent, nor did he, at any time act for or pretend to act for the Heimers, in the making of said contract or in any discussions leading up to the making thereof. The appellant did not at any time, until just before the filing of this suit, claim that the Heimers were in any way obligated to pay for any of said work. As late as January, 1956, appellant claimed that Hill Country Estates, Inc., alone was obligated under said contract, although the work was completed on June 15, 1954. The record further shows that the appellant at no time made or caused to

be made any search of the deed records of Bexar County, Texas, with reference to the title to the real estate involved.

The record shows that on May 4, 1956, the option agreement between the Heimers and Hill Country Estates, Inc., was terminated, on account of the inability of Hill Country Estates, Inc., and G. E. Melliff to comply with the terms thereof.

■ It is obvious that the facts in evidence fail to show a partnership. There was no express or implied agreement between the Heimers and G. E. Melliff or Hill Country Estates, Inc., to become or act as partners. Therefore, unless the Heimers held themselves out as partners in such manner as to estop themselves, they are not liable upon the contract entered into between appellant and Hill Country Estates, Inc.

Are the facts in this case sufficient to create an estoppel against the Heimers? We think not. The facts fail to show that they at any time acted inconsistently with the true facts. They did not, by word or act, represent that they were partners with Hill Country Estates or with G. E. Melliff. The plat and building restrictions relied upon by appellant do not, as a matter of law, constitute a representation that either G. E. Melliff or Hill Country Estates, Inc., was authorized to act for them. The fact that they received benefits of the paving of streets does not estop them. They had a right to such benefits under their option contract. The deed records, which appellant admits he did not search or cause to be searched, would reveal the true ownership of the land.

■■ In order to constitute an estoppel there must be a false representation or concealment. 17 Tex.Jr. 137; Herbert v. Denman, Tex.Civ.App., 44 S.W.2d 441; Dallas Trust & Savings Bank v. Brown,

Tex.Civ.App., 48 S.W.2d 1044; Lawson v. First National Bank of Rotan, Tex.Civ. App., 150 S.W.2d 279; Humble Oil & Refining Co. v. Trapp, Tex.Civ.App., 194 S. W.2d 781. The party to whom the representation was made must have been ignorant of the true facts. Noxon v. Cockburn, Tex.Civ.App., 147 S.W.2d 872. There can be no estoppel in the absence of deception, nor can there be deception when the party pleading the estoppel had full knowledge of the truth of the matter. Collett v. Collett, Tex.Civ.App., 217 S.W.2d 60. Even though the party pleading estoppel had no knowledge of the true facts, if the means of ascertaining the true facts were available to him, and he through neglect failed to pursue the inquiry, he cannot rely on the doctrine of estoppel. Richey v. Miller, 142 Tex. 274, 177 S.W. 2d 255, 170 A.L.R. 832; Lubbock National Bank v. Nickels, Tex.Civ.App., 63 S.W.2d 764; Cline-Clark Co. v. State Trust & Savings Bank, Tex.Civ.App., 81 S.W.2d 541. Under the facts in this case, appellant cannot rely on estoppel.

■ Where the contract for materials, labor and construction is not made with the owner or his duly authorized agent, the owner of the land may not be held liable personally, nor may a lien be fixed on his land. Galveston Exhibition Ass'n v. Perkins, 80 Tex. 62, 15 S.W. 633; Sheer v. Cummings, 80 Tex. 294, 16 S.W. 37; Bethlehem Supply Corp. v. Wotola Royalty Corp., 140 Tex. 9, 165 S.W.2d 443; Cleburne St. Ry. Co. v. Barber, Tex.Civ.App., 180 S.W. 1176; Bledsoe v. Colbert, Tex. Civ.App., 120 S.W.2d 909.

Having reached the conclusion that the Heimers are not personally liable on the contract between appellant and Hill Country Estates, Inc., and that the land belonging to the Heimers is not subject to the lien attempted to be fixed thereon, the judgment of the trial court is affirmed.