Jimmy GIBSON, Appellant,

v.

**BOSTICK ROOFING AND SHEET METAL COMPANY, Appellee.**

No. 08–02–00387–CV.

Court of Appeals of Texas, El Paso.

Aug. 19, 2004.

Richard D. Davis, Richard Davis Law Firm, Midland, for Appellant.

Michelle Greene, Odessa, for Appellee.

Before Panel No. 4, BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

Jimmy Gibson appeals the trial court's judgment in favor of Bostick Roofing and

Sheet Metal Company (Bostick). Bostick sued Gibson on a sworn account and in the alterative on a theory of quantum meruit. It also requested foreclosure of its mechanic's and materialman's lien. Following a bench trial, the trial court entered judgment for $5,500, together with interest and attorneys' fees, and allowed foreclosure of the lien. We abated the case for entry of findings of fact and conclusions of law which are now filed of record. We reverse and render.

## FACTUAL SUMMARY

On August 27, 1987, Gibson purchased an apartment complex located in Odessa, Texas from the Federal Home Loan Mortgage Corporation. The same day, he entered into a contract for deed to sell the complex to Jim and Mary Nell Brown and Gerald and Johnnie Jones. Mary Nell and Johnnie are Gibson's sisters.

In 1993, a hailstorm hit Odessa and the roof of the complex was damaged. Jim Brown (Brown) received an estimate for the repair from Eddie Conner, an estimator and salesman for Bostick. Brown presented himself to Conner as the owner and advised that insurance would cover the damage. Conner admittedly took no steps to verify that Brown was indeed the owner of the property, nor were such steps customary in his business. Conner never dealt with Gibson.

Conner first estimated the cost of replacing the roof at $6,450. Because Brown also wanted to have the roof on his own residence repaired, the price was negotiated down to $5,500 for each roof. The work on the apartment complex was completed near the end of July 1993. Bostick never received payment.

Bostick began sending invoices to Brown. These invoices were prepared by Bostick's president Andy Reed, who was responsible for the company's record keeping and billing. Reed testified that the invoices were prepared in the regular course of business and were sent on a regular basis. On February 8, 1994, Reed sent a letter to Brown notifying him that unless the bill was paid, interest, costs and attorneys' fees would be added to it. Reed also contacted an attorney to assist him in collecting the debt. After retaining counsel, Reed realized that Brown was not the only party with an interest in the property. He soon learned that Gibson was the legal owner while the Browns and the Joneses were the equitable owners. Reed filed an affidavit for a mechanic's and materialman's lien on March 4, 1994. Gibson was notified of the lien by letter, but Reed couldn't recall whether Gibson was notified before the lien was filed. Reed never dealt with Gibson and admitted that he had no contract whereby Gibson agreed to the repairs or the price. Nevertheless, Reed sued because Gibson "got value received."

Gibson, a resident of Dallas, testified that he didn't know about the hail storm or that the roof of the complex needed to be or was being replaced. He explained the transactions by which Brown owned the apartments and carried insurance on them while Gibson was listed as mortgagee holding a first lien on the property. Gibson admitted that Brown had a right to procure repairs. In fact, under the contract for deed, Brown had no obligation to report any property repairs and Gibson had no duty to inspect the property. He emphasized that Brown did not work for him nor did he have the authority to negotiate on his behalf.

After receiving demand letters, Gibson contacted Brown to inquire about the work. Brown admitted that he had a new roof put on the apartment complex, that it was covered by insurance, and that he would take care of everything. Gibson

never followed up with the insurance company or his sisters. He later discovered a problem with the insurance checks that were issued to pay for the repairs. The checks were sent to the complex, Brown forged Gibson's name, and cashed the checks. Gibson filed a complaint with the district attorney's office and asked the insurance company to reissue the checks. The district attorney refused to file charges; the insurance company investigated and reported that the statute of limitations had expired.

On August 23, 1994, the Joneses transferred their interest in the complex to the Browns. In December 1995, Gibson repossessed the property and the Browns signed a quitclaim deed transferring their interest. The deed was never recorded. Gibson ultimately sold the property to the Thompsons on a contract for deed. Bostick filed suit on January 17, 1995.

## THE TRIAL COURT'S FINDINGS

Succinctly put, the trial court's findings of fact were as follows:

· Gibson executed a contract for deed providing for the transfer of the apartment complex to the Browns and the Joneses.

·Gibson admitted that he considered Brown to be an owner of the property who had authority to contract with Bostick.

·On or about May 18, 1993, Brown represented himself to Bostick as the owner and entered into an agreement whereby Bostick would install a new roof for a price of $5,500.00.

·On or about July 23, 1993, Bostick installed a new roof in accordance with his agreement.

·The reasonable fair market value of the roofing job at the time of installation was $5,500.00, which remains unpaid.

·Gibson was notified in writing that the roofing work had been performed and Bostick claimed $5,500.00 was due.

·On or about December 1995, the complex was deeded back to Gibson.

·The reasonable value of the necessary services provided by Bostick's attorney was $1,000.00.

The trial court's conclusions of law were as follows:

·Gibson was unjustly enriched in the amount of $5,500.00.

·Gibson is indebted to Bostick in the amount of $5,500.00 plus attorney's fees of $1,000.00.

·The judgment bears interest at the rate of 10% per annum from September 1, 1993, until paid.

## LIABILITY ISSUES

In his first supplemental point of error, Gibson challenges the legal and factual sufficiency of the evidence to support the trial court's finding that Brown had authority to enter into the contract since the court failed to find that (1) there was a contract between Gibson and Bostick; (2) that Bostick undertook its repair of the roof for Gibson, the party to be charged; and (3) that Brown was Gibson's agent or had authority to directly contract on Gibson's behalf. Simply stated, Gibson complains that he cannot be liable for a debt for which he did not contract and of which he knew nothing at all. He also argues that he cannot be liable under a theory of quantum meruit because the trial court failed to find that Gibson considered Brown to have authority to act on his behalf. Finally, he contends that no evidence was offered to show that he was liable under a sworn account or a quantum meruit theory.

## Standard of Review

██ In any case tried to the court without a jury, a party may request findings of fact and conclusions of law. Tex. R.Civ.P. 296. Findings of fact have the same force and dignity of a jury verdict. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994); *Franco v. Franco,* 81 S.W.3d 319, 332 (Tex.App.-El Paso 2002, no pet.). However, they are not conclusive when a complete reporter's record appears in the appellate record. *Tucker v. Tucker,* 908 S.W.2d 530, 532 (Tex.App.-San Antonio 1995, writ denied). When the trial court acts as a fact finder, its findings are reviewed under legal and factual sufficiency standards. *In re Doe,* 19 S.W.3d 249, 253 (Tex.2000). Although a trial court's conclusions of law may not be challenged for factual sufficiency, the appellate court may review the conclusions drawn from the facts to determine their correctness. *Ashcraft v. Lookadoo,* 952 S.W.2d 907, 910 (Tex.App.-Dallas 1997, pet. denied).

██ In considering a "no evidence" legal sufficiency point, we consider only the evidence and inferences that tend to support the findings and disregard all evidence and inferences to the contrary. *See Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992); *Texas Tech Univ. Health Sciences Ctr. v. Apodaca,* 876 S.W.2d 402, 411–12 (Tex.App.-El Paso 1994, writ denied). If more than a scintilla of evidence supports the questioned finding, the "no evidence" point fails. *See Tseo v. Midland Am. Bank,* 893 S.W.2d 23, 25 (Tex.App.-El Paso 1994, writ denied).

██ In reviewing factual sufficiency, we consider all of the evidence, but we do not view it in the light most favorable to the verdict. *See Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996); *Levario v. State,* 964 S.W.2d 290, 295 (Tex. App.-El Paso 1997, no pet.). We will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Levario,* 964 S.W.2d at 295. In conducting a factual sufficiency review, the reviewing court cannot substitute its conclusions for those of the fact finder. *See id.* It is not within the province of this court to interfere with the fact finder's resolution of conflicts in the evidence or to pass on the weight of credibility of the witnesses' testimony. *See id.* Where there is conflicting evidence, the fact finder's verdict on such matters is generally regarded as conclusive. *See id.*

## Theory of Quantum Meruit

██ Quantum meruit damages are available in two contexts: (1) when a plaintiff has partially performed an express contract, but because of the defendant's breach, the plaintiff is prevented from completing the contract and (2) in the absence of an express contract, under the theory of an implied contract. *McFarland v. Sanders,* 932 S.W.2d 640, 646 (Tex.App.-Tyler 1996, no pet.). Here, quantum meruit damages would have to arise independent of an express contract since Bostick did not contend that it partially performed a contract that Gibson's breach prevented from being completed. *See id.* In this context, quantum meruit would be based upon an agreement implied by law to pay for beneficial services rendered and knowingly accepted. *Vortt Exploration Co. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex.1990). A plaintiff may recover in quantum meruit when nonpayment for services rendered would "result in an unjust enrichment to the party benefited by the work." *City of Ingleside v. Stewart,* 554 S.W.2d 939, 943 (Tex.Civ.App.-Corpus Christi 1977, writ ref'd n.r.e.). To recover quantum meruit damages, a claimant must prove that: (1) he rendered valuable services or furnished materials; (2) for the

person sought to be charged; (3) such services and materials were accepted, used and enjoyed by the person sought to be charged; and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Vortt Exploration Co.,* 787 S.W.2d at 944. "To recover in quantum meruit, the plaintiff must show that his efforts were undertaken *for* the person sought to be charged; it is not enough to merely show that his efforts benefitted the defendant." *Economy Forms Corp. v. Williams Brothers Construction Co.,* 754 S.W.2d 451, 459 (Tex.App.-Houston [14th Dist.] 1988, no writ).

▮ Here, to recover under a theory of implied contract, Bostick must show that it undertook the roof repairs for Gibson. *See Economy Forms Corp.,* 754 S.W.2d at 458; *McFarland,* 932 S.W.2d at 643. It is not enough that Bostick demonstrated that Gibson incidentally benefitted from Bostick's efforts. *See id.* Bostick contracted with Brown, Bostick expected Brown to pay for the repairs, and Bostick had no contact with Gibson. Consequently, there is no evidence that Bostick provided the repair for Gibson's benefit. *See also McFarland,* 932 S.W.2d at 640 (where the court found no recovery for quantum meruit under a legal sufficiency review against record owner of real property when it was the owner's father who contracted for the improvements; the court stated that there was no evidence that the improvements were undertaken for the record owner or for his benefit). After reviewing only the evidence and inferences which support the verdict, and disregarding all evidence and inferences to the contrary, we conclude there was no evidence to support Bostick's claim. We sustain Supplemental Point of Error One. Because

we have found the evidence legally insufficient, we need not address Gibson's factual sufficiency complaint.

## Sworn Account

The elements necessary to prove a suit on a sworn account are: (1) a sale and delivery of goods or services; (2) the charges on account are just, i.e., prices are charged in accordance with agreement or, in absence of agreement, are usual, customary, and reasonable prices for that good or service; and (3) the amount remains unpaid. Tex.R.Civ.P. 185. The cause of action must be supported by the affidavit of the party, his agent or attorney taken before some officer authorized to administer oaths, to the effect that such claim is, within the knowledge of affiant, just and true, that it is due, and that all just and lawful offsets, payments and credits have been allowed. Tex.R.Civ.P. 185. Bostick's affidavit contained all necessary components and was attached to its petition. A party resisting a sworn claim must comply with the rules of pleading required in any case and must timely file a written denial, under oath, or he will not be permitted to deny the claim. Tex.R.Civ.P. 93(10); 185. Gibson did not file a sworn denial.

▮ However, it is well established that the rule which makes a verified account *prima facie* evidence in the absence of a written denial under oath does not apply to transactions between third parties or parties who were strangers to the transaction. *McCamant v. Batsell,* 59 Tex. 363 (1883); *Hassler v. Texas Gypsum Co.,* 525 S.W.2d 53, 54 (Tex.Civ.App.-Dallas 1975, no writ). This exception has been applied where the plaintiff's own pleadings—or the invoices or other evidence exhibited as the basis of the obligation—reflected that the defendant was not a party to the original transaction.

*See id.* Bostick attached the following documents to its petition: (1) the job estimate which contained Brown's name; (2) two invoices addressed to Brown; (3) a demand letter addressed to Brown; (4) a letter from its attorney to Gibson notifying him of the materialman's lien; and (5) a demand letter from its attorney to Gibson.

Gibson transferred the apartment complex to Brown under a contract for deed. A contract for deed is an agreement by a seller to deliver a deed to property once certain conditions have been met. Black's Law Dictionary 320 (7th ed.1999). These contracts, also referred to as "land sale contracts" or "contracts of sale," typically provide that upon making of a down payment, the buyer is entitled to immediate possession of the property; however, title remains in the seller until the purchase price is paid in full. *Graves v. Diehl,* 958 S.W.2d 468, 470–71 (Tex.App.-Houston [14th Dist.] 1997, no pet.); Black's Law Dictionary 320 (7th ed.1999). The purchase price is typically paid in installments over a course of years. *Id.* at 471.

Bostick argues that Gibson could not be a stranger to the account since the trial court determined, based on evidence offered at trial, that Gibson had placed Brown in a position of apparent authority. Alternatively, Bostick argued that Gibson ratified Brown's unauthorized act because Gibson was a named insured and Brown told him the roof repair would be covered by insurance proceeds, and because Gibson allowed Brown to handle the matter. However, Bostick ultimately admitted that it was not contending that Brown was Gibson's agent.

*Apparent Authority*

Contrary to Bostick's contention, the trial court did not find that Brown had apparent authority to contract on behalf of Gibson. An "agent" is one who is authorized by another to transact business or manage some affair for him. *Neeley v. Intercity Management Corp.,* 732 S.W.2d 644, 646 (Tex.App.-Corpus Christi 1987, no writ); *Jorgensen v. Stuart Place Water Supply Corp.,* 676 S.W.2d 191, 194 (Tex. App.-Corpus Christi 1984, no writ). Apparent authority "may arise either from a principal knowingly permitting an agent to hold herself out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority she purports to exercise." *Ames v. Great So. Bank,* 672 S.W.2d 447, 450 (Tex.1984). "[A] prerequisite to a proper finding of apparent authority is evidence of conduct by a principal, relied upon by the party asserting apparent authority, which would lead a reasonably prudent person to believe an agent had authority to act for the principal." *Campbell v. C.D. Payne & Geldermann Sec.,* 894 S.W.2d 411, 422 (Tex.App.-Amarillo 1995, writ denied). "A court may consider only the conduct of the principal leading a third party to believe the agent has authority in determining whether an agent has apparent authority." *Sociedad De Solaridad Soc. "El Estillero" v. J.S. McManus Produce Co.,* 964 S.W.2d 332, 334 (Tex.App.-Corpus Christi 1998, no pet.). Bostick did not know that Gibson was the record owner of the property until after it had completed its work and Brown had failed to pay the invoice. Accordingly, Bostick cannot argue that it relied upon conduct by Gibson that would lead a reasonably prudent person to believe that Brown had authority to act on his behalf. *See Campbell,* 894 S.W.2d at 422. Since the court may only consider Gibson's conduct in determining whether a third party could reasonably believe that Brown had authority, there is no evidence of apparent authority.

## Actual Authority

■ Actual authority of an agent may arise as a result of conduct by the principal that intentionally or negligently allows the agent to believe he has been given actual authority to represent the principal. *Austin Area Teachers Federal Credit Union v. First City Bank–Northwest Hills, N.A.*, 825 S.W.2d 795, 799 (Tex. App.-Austin 1992, writ denied). If a party holds out another to be its agent in a certain matter, or has knowingly permitted him to act as such agent, the authority of the agent to act will be presumed in so far as the rights of third persons are concerned. *Wink v. Wink*, 169 S.W.2d 721, 723 (Tex.Civ.App.-Galveston 1943, no writ). The agency relationship does not depend upon express appointment or assent by the principal; rather, it may be implied from the conduct of the parties under the circumstances. *Jorgensen*, 676 S.W.2d at 194; *Dallas Heating Co. v. Pardee*, 561 S.W.2d 16, 20 (Tex.Civ.App.-Dallas 1977, writ ref'd n.r.e.). The fact of agency may be established by circumstantial evidence, and proof may be made of all the facts and circumstances that shows the relationship of the parties and throws light upon the character of such relations. *Welch v. Coca–Cola Enterprises, Inc.*, 36 S.W.3d 532, 540 (Tex.App.-Tyler 2000, pet. withdrawn).

■ Here, there is no evidence that Gibson intentionally or negligently allowed Brown to believe he was given actual authority to contract on Gibson's behalf nor any evidence that he held Brown out as his agent. *See Austin Area Teachers*, 825 S.W.2d at 799; *Wink*, 169 S.W.2d at 723. To the contrary, Gibson testified that Brown did not work for him and had no authority to negotiate on his behalf. Thus, Brown had no actual authority to bind Appellant.

## Ratification

■ The elements of ratification are: (1) approval by act, word, or conduct; (2) with full knowledge of the facts of the earlier act; and (3) with the intention of giving validity to the earlier act. *Motel Enterprises, Inc. v. Nobani*, 784 S.W.2d 545, 547 (Tex.App.-Houston [1st Dist.] 1990, no writ). Bostick argues that Gibson ratified the contract by allowing Brown to take care of the matter. We disagree. Gibson called Brown after receiving a demand for payment for the repairs. Brown told him that he had procured roof repairs, that the repairs were covered by insurance, and that he would take care of the payment. There is no evidence that Gibson had full knowledge of the earlier act taken by Brown or that he intended to validate the act. *See Motel Enterprises, Inc.*, 784 S.W.2d at 547.

We find no apparent or actual authority for Brown to contract on behalf of Gibson, nor do we find ratification. Gibson was not a party to the original transaction in which Brown received the estimate and Bostick completed the work. As a stranger to the account, Gibson did not need to file a verified denial to the sworn account. Gibson's Original Point of Error Three is also sustained.

## FORECLOSURE OF CONSTITUTIONAL OR STATUTORY LIEN

Gibson contends that Bostick's constitutional lien was invalid because Bostick failed to meet the requirements under Texas Constitution, Article 16, section 37. He also suggests that the statutory lien was invalid because Bostick failed to comply with perfecting requirements under Texas Property Code Section 53.001. Bostick counters that Gibson's arguments constitute affirmative defenses which must be affirmatively pled under Texas Rule of

Civil Procedure 94.[1] Alternatively, Bostick maintains that it had a valid constitutional lien because the trial court found that Brown had "apparent authority" to enter into the contract.

## Constitutional Lien Under Article 16, section 37

 Gibson claims that Bostick does not have a valid lien under article 16 because (1) Bostick was a subcontractor and not the original contractor; (2) there was no privity of contract between Gibson and Bostick; and (3) Gibson, not Brown, was the record owner for purposes of fixing a lien. In any foreclosure suit, the plaintiff must establish the existence of a valid obligation owing to him by the defendant because foreclosure is merely a method of assuring payment of the plaintiff's claim. *Hagan v. Anderson,* 506 S.W.2d 298, 302 (Tex.Civ.App.-San Antonio 1973, writ ref'd n.r.e.). Article 16, section 37 provides as follows:

> Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens.

Tex. Const. art. 16, § 37. If an owner contracts with a person to furnish labor or materials to improve his property and does not pay for it, then the laborer or materialman is entitled to assert his right against the property which he improved by his efforts or materials. *Rhoades v. Miller,* 414 S.W.2d 942, 943 (Tex.Civ.App.-Tyler 1967, no writ). This section creates a lien when there is a contract to repair a building and material or labor is furnished by the original contractor to the owner. *Rhoades,* 414 S.W.2d at 944. This lien is self-executing, but it does not apply to subcontractors, who are derivative claimants. *See id.; Berger Engineering Co. v. Village Casuals, Inc.,* 576 S.W.2d 649, 652 (Tex.Civ.App.-Beaumont 1978, no writ). Further, this provision does not give a lien to those who have no privity of contract with the owner. *Wiseman Hardware Co. v. R.L. King Const. Co.,* 387 S.W.2d 79, 81 (Tex.Civ.App.-Dallas 1965, no writ).

### Original Contractor versus Subcontractor

Gibson argues that Bostick was a subcontractor because the lien affidavit signed by Reed provides that Brown was the original contractor. Due to an absence of definitions for "contractor" and "subcontractor" under the constitution, we will utilize those from the Property Code included under materialman's liens. "Original contractor" means a person contracting with an owner either directly or through the owner's agent. Tex.Prop.Code Ann. § 53.001(7)(Vernon Supp.2004). "Subcontractor" means a person who has furnished labor or materials to fulfill an obligation to an original contractor or to a subcontractor to perform all or part of the work required by an original contract. *Id.* at § 53.001(13).

### Privity of Contract

 We must also look at whether the evidence established privity of contract between the owner and Bostick. The trial court did not find a contract between Gib-

---

1. Bostick has provided no authority supporting his contention that pleading an invalid lien constitutes anaffirmative defense that must be pled. We can find no authority for this proposition. Bostick cannot recover against Gibson under a lien unless Bostick first establishes that he has a valid lien. *See Shipley v. Biscamp,* 580 S.W.2d 52, 54(Tex.Civ.App.-Houston [14th Dist.] 1979, no writ); *Hagan v. Anderson,* 506 S.W.2d 298, 302 (Tex.Civ.App.-San Antonio 1973, writ ref'd n.r.e.).

son and Bostick that would establish privity. Instead, the court found that a contract existed between Bostick and Brown. Nor do the findings identify an agency relationship between Gibson and Brown. Bostick maintains that the trial court found privity of contract, as reflected by its comment on the record that "Brown was put in a position of at least apparent authority to enter into an agreement." Oral comments from the bench do not constitute findings of fact and conclusions of law. *In re Doe 10,* 78 S.W.3d 338, 340 n. 2 (Tex.2002); *Roberts v. Roberts,* 999 S.W.2d 424, 440 (Tex.App.-El Paso 1999, no pet.). As for Bostick's argument that Gibson admitted that Brown had the authority to enter the contract, the record reveals Gibson admitted that Brown had actual authority to enter into contracts on his own behalf, not to enter into contracts on behalf of Gibson.

Further, "a person in possession of land under a written contract to purchase is not, within the meaning of such statutes as those under which the persons claiming liens assert rights, the owner of the land or of the improvements he may place on it, and for this reason cannot fix a lien on either." *Galveston Exhibition Ass'n v. Perkins,* 80 Tex. 62, 15 S.W. 633, 634–35 (1891). "Whether the lien be created by statute, or directly by the constitution, ownership of the property and a contract binding upon the owner are indispensable." *Bledsoe v. Colbert,* 120 S.W.2d 909, 910 (Tex.Civ.App.-Eastland 1938, no writ). In addition, where the contract for labor, materials or construction is not made with the owner or his duly-authorized agent, a lien may not by fixed on his property. *Kelly v. Heimer,* 312 S.W.2d 430, 434 (Tex.Civ.App.-San Antonio 1958, writ ref'd n.r.e.).

The record reveals that Brown was merely an equitable owner of the property under a contract for deed, that Gibson held legal title to the property, and that Bostick contracted only with Brown. Because the record does not establish that Brown was Gibson's agent, there was no privity of contract between Gibson and Bostick. Consequently, Brown could not fix a lien on the property. Accordingly, without deciding whether Brown was the original contractor or subcontractor, we conclude that Bostick did not possess a valid constitutional lien.

### Statutory Lien Under Property Code § 53.001 et seq.

Gibson maintains that Bostick did not have a valid statutory lien because it failed to follow the perfecting requirements under the Texas Property Code by not filing the lien affidavit until nearly eight and a half months after the accrual of the indebtedness and by not sending notices to the original contractor and owner.

A person has a lien if (1) he "furnishes labor or materials for construction or repair" to a house, building, or improvement, or (2) "furnishes the labor or materials under or by virtue of a contract with the owner or the owner's agent, trustee, receiver, contractor, or subcontractor." Tex.Prop.Code Ann. § 53.021(a)(Vernon Supp.2004). However, where a contract for materials, labor and construction is not made with the owner or his duly-authorized agent, the owner of land may not be held liable personally, nor may a lien be fixed on his land. *Kelly,* 312 S.W.2d at 434. One merely in possession under a contract to purchase is not the owner of the land and cannot create a mechanic's lien on it; only the owner or his agent may make contracts fixing liens on lands and buildings. *Wilkerson & Satterfield v. McMurry,* 167 S.W. 275, 278 (Tex.Civ. App.-Dallas 1914, no writ). A contractor's and materialman's lien relates back to the

inception of the contract, and the time when the first material was furnished, as against the immediate parties to, or those having prior notice of, the contract, but cannot be established against the landowner without his knowledge or consent, nor predicated on a mere executory contract of purchase between others. *McCallen v. Mogul Producing & Refining Co.*, 257 S.W. 918, 922 (Tex.Civ.App.-Galveston 1923, writ dism'd w.o.j.).

 Our courts have long held that a mechanic's lien attaches to the interest of the person contracting for construction. *Diversified Mortg. Investors v. Lloyd D. Blaylock General Contractor*, 576 S.W.2d 794, 805 (Tex.1978). Thus, if a lessee contracts for construction, the mechanic's lien attaches only to the leasehold interest, not to the fee interest of the lessor. *Grube v. Nick's No. 2*, 278 S.W.2d 252, 253 (Tex.Civ. App.-El Paso 1955, writ ref'd n. r. e). Similarly, a mechanic's lien may attach to an equitable interest of one holding an option on land, but the lien is extinguished if the fee is not obtained by the optionee. *Diversified Mortg. Investors*, 576 S.W.2d at 805, *citing Kelly*, 312 S.W.2d at 430.

 Bostick had no contract with Gibson and neither the evidence nor the trial court's findings establish an agency relationship between Gibson and Brown. Consequently, Bostick could not attach a mechanic's lien to Gibson's interest. *See Diversified Mortg.*, 576 S.W.2d at 794. While the lien could have attached to Brown's equitable ownership interest, the lien was extinguished when Brown defaulted on his payments and Gibson repossessed the property. *See Kelly*, 312 S.W.2d at 434.

Moreover, Bostick failed to comply with the statutory requirements for fixing a statutory lien. The statute provides that "the person claiming the lien must file an affidavit with the county clerk of the county in which the property is located ... not later than the 15th day of the fourth calendar month after the day on which the indebtedness accrues." Tex.Prop.Code Ann. § 53.052(a)(Vernon Supp.2004). Indebtedness to an original contractor accrues "on the last day of the month in which the original contract has been completed," or to a subcontractor, who has furnished labor or material to an original contractor, indebtedness accrues on the last day of the last month in which the labor was performed or the material furnished. Tex.Prop.Code Ann. § 53.053(b)(Vernon Supp.2004). The repairs were completed around July 23, 1993, so that the indebtedness accrued the last day of July 1993. *See* Tex.Prop.Code Ann. § 53.053(b). Bostick filed its affidavit of lien on March 4, 1994. It had until the fifteenth day of the fourth calendar month after the day on which the indebtedness accrued to file its affidavit—November 15, 1993. *See* Tex.Prop.Code Ann. § 53.052. Because Bostick failed to comply with the statutory requirements, the statutory lien was invalid.

### Conclusion

Having concluded that there is no evidence that Bostick could affix either a valid constitutional or statutory lien upon Gibson's interest in the complex, foreclosure of the lien was improper. We sustain Supplemental Point of Error Two and Original Points of Error One and Two.[2]

### ATTORNEY'S FEES

In its Original Point of Error Four, Gibson complained that Bostick was not enti-

---

**2.** In as much as we have found no evidence to support a valid constitutional or statutory lien, we need not address Bostick's factual sufficiency challenge.

tled to attorney's fees because it did not have a valid lien and because it failed to tender any evidence of reasonable and necessary attorney's fees. Inasmuch as there is no valid theory upon which the award can prevail, we sustain this issue as well.

Accordingly, the judgment of the trial court is reversed and rendered that Bostick take nothing.