COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

JESSE F. CLAY, III,                                             )

                                                                              )             
No.  08-03-00490-CV

Appellant,                          )

                                                                              )                   Appeal from the

v.                                                                           )

                                                                              )               
171st District Court

MICHAEL A. MERCADO,
Individually and         )

d/b/a OCEAN GALLERY, INC.,                          )          
of El Paso County, Texas

                                                                              )

Appellee.                           )                 (TC# 2003-1696)

                                                                              )

 

 

O
P I N I O N

 

In this deceptive
trade practices case, Appellant Jesse F. Clay, III sued Appellee Michael A.
Mercado, Individually and d/b/a Ocean Gallery, Inc., for damages related to the
sale of an aquarium system.  In a bench
trial, the trial court rendered a take-nothing judgment in favor of Mr.
Mercado.  On appeal, Mr. Clay challenges
the legal and factual sufficiency of the evidence to support the trial court=s findings that:  (1) Mr. Mercado made no material
misrepresentation to Mr. Clay which induced him to purchase the aquarium; and
(2) Mr. Clay failed to mitigate his damages. 
We affirm.








In February 2000,
Mr. Clay purchased an aquarium system from Mr. Mercado=s
business, Ocean Gallery, Inc., after a period of negotiations back and forth
about the proposed system.  By letter,
Mr. Mercado provided an amended proposal for the custom aquarium free-standing
unit which included, among other things, the following:  (1) Aone
all glass aquarium unit approx. 96 1/2 L x 24 1/2 W x 24 H (240 gallons);@ (2) Acustom
smoked backdrop;@ (3) Aprotein skimmer necessary for saltwater
set ups;@ (4) Afully automation of lighting system;@ (5) Aan
assortment of stunning exotic saltwater fish. (between 15 to 20);@ (6) Aa
stunning white marble Faux finish of your choice;@
and (7) Acomplete
set up and installation.@  In the proposal, Mr. Mercado stated, Awe guarantee that you will have a [sic]
most beautiful free standing unit around.@  Mr. Mercado also made the following
statements:  (1) A[w]e
are [a] good standing member of the Southwest Interior Decorating Network, as
well as the B.B.B.;@ and (2)
the company was offering Mr. Clay the aquarium system Ain
a full turnkey fashion, for $4,700.00 with guaranteed results.@ 

According to Mr.
Clay=s
testimony, the aquarium unit was installed in his home sometime after February
2000 and before June 2000.  A photograph
of the unit shows that it was installed on a tile floor.  Mr. Clay stated that he and Mr. Mercado
mutually agreed to install the aquarium in that location.  Mr. Clay testified that he was instructed to
fill the tank slowly and then allow the tank to cycle for a minimum of three to
four months before putting fish in the tank. 
He did not put any fish in the tank until December 2000 and those fish
died.  Mr. Clay spent $315 to replace the
initial fish.








In November 2001,
Mr. Clay was at home watching television when he heard a crack or pop.  He then heard a trickle or leak, and then all
of a sudden the entire side of the aquarium tank blew out.  The tank began spilling 220 gallons of
saltwater, fish, and coral unto the floor. 
The fish in the tank died.  The
carpet was soaked and at trial, Mr. Clay testified that the bid to replace the
carpet and repair the floor was $2,752.06. 
After the tank blew out, Mr. Clay called Mr. Mercado and told him
that the tank had failed.  Mr. Mercado
told him not to worry and that he would take care of it.  Mr. Clay stated that Mr. Mercado took the
aquarium back and returned the refurbished unit in January or February
2002.  When the unit was redelivered, Mr.
Clay asked that it be left on his covered back porch where it has remained.  Even though it was reportedly fixed, Mr. Clay
has not put water into it since it was returned to him.  Mr. Clay explained that he wanted to make
sure it did not leak and was concerned about the plastic reinforcement on the
sides of the tank.  Mr. Clay tried to
discuss the matter with Mr. Mercado on numerous times, but after a while he
gave up on getting an answer from him. 
Mr. Clay has never been able to get the aquarium functioning again.  








It was only after
his problems with the tank that Mr. Clay determined the aquarium system he had
received was different from the system he thought he had purchased pursuant to
Mr. Mercado=s
proposal.  Mr. Clay testified that he
wanted a glass aquarium and had thought he was purchasing a glass aquarium, as
stated in the proposal, but the aquarium he received was made of plastic
acrylic.  Mr. Clay stated that he first
became aware that the aquarium was acrylic, not glass, when it broke in his
home.  The proposal also stated it would
be a 240-gallon aquarium, but Mr. Clay later discovered that it was actually a
220-gallon aquarium.  Mr. Clay also
complained that he did not receive a custom smoke backdrop, a protein
skimmer,  a fully automated lighting
system with the aquarium, or a stunning white marble faux finish.  Although the proposal included an assortment
of stunning exotic saltwater fish, Mr. Clay testified that the first batch of
fish died within ten days and the second batch died within a week.  Further, the proposal stated that the
aquarium system would be delivered in a full Aturnkey@ fashion with guaranteed results, which
Mr. Clay understood to mean that the tank would be up and functioning,
completely set up, and the fish would be alive. 
After filing his lawsuit, Mr. Clay also discovered that Ocean Gallery
was not a corporation in Texas, but rather is an assumed named for Mr.
Mercado.  Mr. Clay stated that the
representation that the business was a corporation was important to him because
AI wouldn=t
have to worry about it if I had problems. 
They would take care of it.@

At trial, Mr.
Mercado=s
testimony differed considerably from Mr. Clay=s
account of events.  Mr. Mercado testified
that he has been operating Ocean Gallery for about eight years and conceded
that through a misunderstanding he thought he could use the business name Ocean
Gallery, Incorporated.  Mr. Mercado
explained that in his proposal the exact quantity of water the aquarium could
hold was not guaranteed, but rather was an approximation.  According to Mr. Mercado, the aquarium
system sold to Mr. Clay included a custom smoke backdrop, a protein skimmer,
and a fully automated lighting system. 
Mr. Mercado agreed that the white marble faux finish was not done on the
unit, but this change had been at the request of Mrs. Clay who had instructed
him to paint it to match the interior walls of the house instead.

Mr. Mercado agreed
that the proposal stated that the aquarium would be Aall
glass,@ but he
stated this was a typographical error. 
According to Mr. Mercado, he told Mr. Clay that he was going to give him
an acrylic aquarium.  Mr. Mercado stated
that his company does not build glass aquariums and has never built glass
aquariums.  He also stated that Mr. Clay
understood he was getting a custom aquarium made out of acrylic and saw that it
was an acrylic aquarium when he went to Mr. Mercado=s
aquarium manufacturing facility on Lockheed to inspect the aquarium prior to
installation.  According to Mr. Mercado,
he extensively discussed the benefits of acrylic versus glass with Mr.
Clay.  








According to Mr.
Mercado, he installed the aquarium in March 2000.  At the time of delivery, Mrs. Clay was practicing
Feng Shui and wanted to place the aquarium in a certain location on a tile
floor.  Mr. Mercado told them that it
would leak because the floor was uneven. 
They both appeared to understand his concern, but they wanted him to
install it there anyway.  Mr. Mercado
explained that if the floor is not level, pressure points will develop.  Mr. Mercado does not normally place aquariums
on tile floor because tile is not level. 
Mr. Mercado checked the tile floor in Mr. Clay=s
home and found that it was not level. 
However, because the Clays were so persistent, he installed the aquarium
at that location even though he knew it would leak.

In Mr. Mercado=s opinion, he delivered the aquarium in
Aturnkey@
fashion, that is a complete set up and installation.  After turning over the aquarium, the client
must begin to service it.  Mr. Mercado
explained that all clients are instructed that the tank water needs to be
cycled.  For a saltwater system, the salt
is cycled out in order to balance out the salinity level.  Within two or three days, the starter fish
are then introduced to establish beneficial bacteria (ammonia and
nitrate).  Mr. Mercado stated that he
explains to his clients that the starter fish are going to die in the cycling
process.  Mr. Mercado also stated that it
takes four to six weeks for the tank to cycle and that after it cycles and
nitrate level balances, the desired fish are introduced.  








After the leak
developed in the aquarium, Mr. Mercado refurbished the unit and, per
Mr. Clay=s
instructions, left it on the back porch. 
Mr. Clay told Mr. Mercado not to worry about the carpet and he did not
complain about receiving an acrylic aquarium instead of a glass aquarium.  The last time Mr. Clay and Mr. Mercado spoke,
Mr. Clay had not done anything with the aquarium and wanted Mr. Mercado to
install the aquarium as a fresh water system instead and for free.  Mr. Mercado also testified that his
representation that he was a good standing member of the Southwestern Interior
Decorating Network and the B.B.B. was a correct statement in the 2000 letter
proposal.  

Basilio Villegas,
an employee of Ocean Gallery, testified that he built Mr. Clay=s aquarium.  Mr. Villegas has twenty years experience
doing acrylic work and fabricating aquariums. 
He stated that the aquarium was returned in order to be
refurbished.  He had never had one fail
before and remembered this aquarium because it was the only one that has ever
been returned.  Mr. Villegas recalled that
when the aquarium was returned, it was bowed out in the middle and in the
bottom.  Mr. Villegas has never
manufactured a glass aquarium, but believed acrylic is stronger than
glass.  Although Mr. Villegas had never
before had to refurbish an aquarium, the aquarium was retested after
refurbishment and he was satisfied with the product when it left the shop
again.

In Mr. Clay=s testimony, he agreed that his wife
had attended a Feng Shui class around the time that the aquarium was installed,
but denied that her interest in Feng Shui was the deciding factor in placing
the aquarium on the tile floor. 
According to Mr. Clay, Mr. Mercado never advised him not to place the
aquarium on the tile floor because the floor was uneven.  Mr. Mercado also never told him that the
aquarium would have an acrylic tank even though the proposal stated it would be
made of glass.  Mr. Clay acknowledged
that he visited the facility where the tank was manufactured, but at that time
the tank was covered in paper and he thought the tank was made out of
glass.  

Following the
bench trial, the trial court entered a take-nothing judgment in favor of
Mr. Mercado.  Upon request, written
findings of fact and conclusions of law were prepared and filed.  Pertinent to this appeal, the trial court
found:








$                  
Ocean Gallery Inc. is not an existing
entity.  Instead it was filed as an
assumed name in 1995;

                                                              .               .               .

 

$                  
Ocean Gallery was a member of the Better
Business Bureau of El Paso at the time of this transaction;

 

$                  
While the purchase/proposal order indicated Aglass@
aquarium, the uncontroverted expert testimony indicated that acrylic is 10
times stronger than glass, 12 times the better insulator and 5 times clearer;

 

$                  
In addition, Plaintiff visited the plant where
said aquarium was being built;

 

$                  
March 2000, Defendant delivered to Plaintiff an
acrylic, 230 gallon plus, free standing custom aquarium;

 

$                  
Prior to installation, Defendant informed
Plaintiff that an aquarium should not be installed on a tile floor.

 

$                  
November, 2001, a leak developed;

 

$                  
Plaintiff was home when the leak began,
therefore water damage was minimal;

 

$                  
January, 2002, the aquarium was refurbished by
Defendant, and Defendant was instructed by Plaintiff to leave the aquarium
outside in the back porch, exposed to the elements;

 

$                  
June 18, 2002, Plaintiff began calling Defendant
requesting Defendant to set up the tank again.  

 

In its conclusions of law, the court determined: 

 

$                  
There was no material misrepresentation made by
Defendant to Plaintiff which induced Plaintiff to purchase the aquarium.

 

$                  
Plaintiff failed to mitigate his damages. 

 

$                  
Plaintiff shall take nothing from his lawsuit.

 

STANDARDS
OF REVIEW








In a bench trial,
factual and legal sufficiency challenges to the trial court=s findings of fact are reviewable under
the same standards that are applied in reviewing evidence supporting a jury=s answer.  Catalina v. Blasdel, 881 S.W.2d 295,
297 (Tex. 1994); Elias v. Mr. Yamaha, Inc., 33 S.W.3d 54, 62 (Tex.App.‑-El
Paso 2000, no pet.).  However, the
findings are not conclusive when a complete reporter=s
record appears in the appellate record.  Gibson v. Bostick Roofing and Sheet Metal Co.,
148 S.W.3d 482, 489 (Tex.App.‑-El Paso 2004, no pet.).  We review a trial court=s conclusions of law de novo.  See Austin Hardwoods, Inc. v. Vanden
Berghe, 917 S.W.2d 320, 322 (Tex.App.‑-El Paso 1995, writ denied).

In reviewing a
legal sufficiency challenge where the complaining party on appeal did not bear
the burden of proof at trial, we analyze the issue as a Ano-evidence@ challenge.  Croucher v. Croucher, 660 S.W.2d 55,
58 (Tex. 1983).  In our review, we
consider the evidence in a light that tends to support the jury=s finding and disregard all evidence
and inferences to the contrary.  Southwest
Key Program, Inc. v Gil-Perez, 81 S.W.3d 269, 274 (Tex. 2002).  If there is more than a scintilla of evidence
to support the finding, the legal insufficiency challenge fails.  Formosa Plastics Corp. USA v. Presidio Eng=rs & Contractors, Inc., 960
S.W.2d 41, 48 (Tex. 1998).  We will
sustain a no-evidence challenge when: 
(1) the record discloses a complete absence of evidence of a vital fact;
(2) the court is barred by rules of law or of evidence from giving weight to
the only evidence offered to prove a vital fact; (3) the evidence offered to
prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of the vital fact. 
Marathon Corp. v. Pitzner, 106 S.W.3d 724, 727 (Tex. 2003). 








When attacking the
legal sufficiency of the evidence to support an adverse finding on an issue for
which it had the burden of proof, i.e., challenging the trial court=s finding as a matter of law, the
appellant must demonstrate on appeal that the evidence conclusively established
all the vital facts in support of the issue. 
Sterner v. Marathon Oil Company, 767 S.W.2d 686, 690 (Tex. 1989);
Elias, 33 S.W.3d at 59.  A party
attempting to overcome an adverse fact‑finding as a matter of law must
surmount two hurdles.  Sterner,
767 S.W.2d at 690; Elias, 33 S.W.3d at 59.  First, the record must be examined for
evidence that supports the finding, while ignoring all evidence to the
contrary.  Sterner, 767 S.W.2d at
690; Elias, 33 S.W.3d at 59. 
Second, if there is no evidence to support the finding, then the entire
record must be examined to see if the contrary proposition is established as a
matter of law.  Sterner, 767
S.W.2d at 690; Elias, 33 S.W.3d at 59. 
Only if the contrary position is conclusively established will the point
of error be sustained.  Elias, 33
S.W.3d at 59.

In reviewing an
issue asserting that a finding is factually insufficient or against the great
weight and preponderance of the evidence, we consider all the evidence, both
the evidence tending to prove the existence of a vital fact, as well as the
evidence tending to disprove its existence. 
Heritage Resources, Inc. v. Hill, 104 S.W.3d 612, 620 (Tex.App.‑-El
Paso 2003, no pet.).  We will set aside
the judgment only if the supporting evidence is so weak or the finding so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
manifestly unjust.  See Cain v. Bain,
709 S.W.2d 175, 176 (Tex.1986); Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965).

MISREPRESENTATION
CLAIMS UNDER DTPA








In his first
issue, Mr. Clay challenges the trial court=s
adverse finding on his DTPA claim. 
Specifically, Mr. Clay contends that the evidence was legally and
factually insufficient to support the trial court=s
finding that Mr. Mercado made no material misrepresentation to Mr. Clay which
induced him to purchase the aquarium.[1]  

The Deceptive
Trade Practices Act (ADTPA@) prohibits A[f]alse,
misleading, or deceptive acts or practices in the conduct of any trade or
commerce . . . .@  Tex.Bus.&Com.Code
Ann. ' 17.46(a)(Vernon
Supp. 2004-05).  To recover under the
DTPA, the plaintiff must show that: (1) he is a consumer; (2) the defendant
engaged in a false, misleading, or deceptive act; and (3) the act constituted a
producing cause of the plaintiff=s
damages.  Doe v. Boys Clubs of Greater
Dallas, Inc., 907 S.W.2d 472, 478 (Tex. 1995); see also Tex.Bus.&Com.Code Ann. ' 17.50(a).  To establish the producing cause element, the
plaintiff must show that the defendant=s
action was a substantial factor in bringing out the plaintiff=s injury, without which the injury
would not have occurred.  Doe, 907
S.W.2d at 478. 

Mr. Clay asserted
that Mr. Mercado violated the following provisions in the laundry list of
specifically prohibited acts contained in Section 17.46(b): 

(5)        representing that goods or services have
sponsorship, approval, characteristics, ingredients, uses, benefits, or
quantities which they do not have or that a person has a sponsorship, approval,
status, affiliation, or connection which he does not;

 

                                                              .               .               .

 

(7)        representing that goods or services are
of a particular standard, quality, or grade, or that goods are of a particular
style or model, if they are of another;

 

                                                              .               .               .

 








(12)      representing that an agreement confers or
involves rights, remedies, or obligations which it does not have or involve, or
which are prohibited by law;

 

                                                              .               .               .

 

(25)      using the term >corporation,= >incorporated,= or an abbreviation of either of those
terms in the name of a business entity that is not incorporated under the laws
of this state or another jurisdiction.

 

See Tex.Bus.&Com.Code Ann. '
17.46(b)(5), (7), (12) & (25).

On appeal, Mr.
Clay contends that contrary to the trial court=s
finding, Mr. Mercado made material misrepresentations concerning:  (1) the material and size of the aquarium;
(2) the turnkey status and guaranteed results of the aquarium system; and (3)
the corporate status of Ocean Gallery, Inc. 
Mr. Clay asserts that these deceptive acts were a producing cause of his
damages.








Viewing the trial
court=s adverse
finding in the appropriate light, we conclude there was evidence at trial that
supports the finding.  Mr. Mercado
testified that the amended proposal stated all-glass aquarium, but Mr. Clay
knew that he would be receiving an acrylic aquarium.  Mr. Clay visited the manufacturing facility
where only acrylic aquariums were being manufactured.  With regard to the size of the aquarium, we
observe that the amended proposal states that the size was only an
approximation.  Further, Mr. Mercado
testified to the same.  While Mr. Clay
testified that he understood Aturnkey@ to mean complete installation and with
live fish, Mr. Mercado testified that he instructs all of his clients about the
dynamics of an aquatic ecosystem and the necessary death of the starter fish in
the process.  According to
Mr. Mercado, he delivered the aquarium in a Aturnkey@ fashion, which does not include
service and maintenance.  Mr. Clay agreed
that he and his wife were delighted with the aquarium when it was delivered.

At trial, Mr.
Mercado admitted that he had misrepresented the corporate statute of Ocean
Gallery, Inc., however, the evidence showed that this misrepresentation was not
material and was in no way the cause in fact of Mr. Clay=s
damages.[2]  See Doe, 907 S.W.2d at 481.  Based on testimony from Mr. Mercado and Mr.
Villegas, the evidence shows that a leak developed in November 2001 (over a
year and a half after delivery and installation) because it was installed on a
tile floor upon Mr. Clay=s
insistence.

Because there is
some evidence in the record to support the trial court=s
finding that no material misrepresentations were made to Mr. Clay, the legal
sufficiency challenge fails.  In
addition, after reviewing Mr. Clay=s
factually insufficient evidence complaint, we conclude that the supporting
evidence is not too weak nor is the finding against the great preponderance of
the evidence as to be clearly wrong and manifestly unjust.  Issue One is overruled.  Given our disposition of Mr. Clay=s first issue, we need not consider his
second issue, that is, the sufficiency challenge to the finding on Mr. Mercado=s affirmative defense of mitigation of
damages.

We affirm the
trial court=s
judgment.

 

 

July
14, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, McClure, and Chew, JJ.











[1]
Arguably, the trial court=s
statement was a finding of fact, rather than a conclusion of law and was
mislabeled as such.  The trial court=s designation of a Afinding of fact@
or Aconclusion of law,@ however,  is not controlling, and we may treat a
conclusion of law as a finding of fact when appropriate.  Ray v. Farmers State Bank of Hart, 576
S.W.2d 607, 608 n.1 (Tex. 1979).





[2]
We note that Mr. Clay testified that Mr. Mercado=s
representation was important to him, but he never indicated that he relied on
this particular representation. 
Furthermore, there was no evidence that this representation had anything
to do with the failure of the tank.