

# NUMBER 13-11-00199-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

SOUTH TEXAS TRUSS COMPANY, LLC,                    Appellant,

v.

EFRAIN R. LARA,                                         Appellee.

---

## On appeal from the 444th District Court
## of Cameron County, Texas.

---

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Chief Justice Valdez

South Texas Truss Company, LLC ("STTC"), challenges the trial court's take-nothing judgment in favor of Efrain R. Lara.[1]  By five issues, STTC contends that:  (1) the trial court's "judgment is against the great weight and preponderance of the evidence"; (2) the trial court applied the wrong statute; (3) the trial court "erred in finding

---

[1] Lara was pro se at the bench trial and is pro se on appeal.

there was 'no evidence' of [STTC's] failure to provide [Lara] Notice of [STTC's] claim by certified mail and return receipt . . . ."; (4) the trial court's finding relating to delivery of the trusses was erroneous; and (5) the trial court abused its discretion by failing to award attorney's fees to STTC. We affirm.

## I. BACKGROUND

STTC sued Lara for breach of contract after it claimed Lara failed to pay for trusses STTC delivered to Lara's property located at 1329 Calle Pluton, Brownsville, Texas. STTC claimed that because Lara was listed as the owner of the property, he was personally liable for payment for the trusses. STTC sought a foreclosure on the property pursuant to a mechanic's and materialman's lien.

The record shows that Lara's mother, Maria Gloria Lara, contracted with Dream Homes to build a house on the Calle Pluton property.[2] The contract with Dream Homes lists Lara and Maria Gloria as the owners of the property. However, Lara was not a signatory to the contract with Dream Homes. At a bench trial, Maria Gloria testified that she entered the contract with Dream Homes to build the house and that she paid Dream Homes $26,000 to complete the work. According to Maria Gloria, Dream Homes did not complete the construction of the home. At trial, Lara claimed that he was a stranger to the contract with Dream Homes and STTC.

Frank Klinger, STTC's authorized representative, testified that he and a delivery man delivered trusses to 5029 Camellia Drive in Brownsville, Texas, a property also listed as belonging to Lara.[3] Klinger stated that because no one was at the job site

---

[2] There is nothing in the record indicating that STTC sued Maria Gloria or Dream Homes regarding the trusses.

[3] Klinger explained that a "truss" is "a prefabricated, engineered product that is used in the

2

when he made the delivery, he did not get a signature showing that the delivery had occurred. Klinger then identified a picture as the property located at 5029 Camellia Drive in Brownsville. Klinger stated that he took the picture. Klinger then pointed out to the trial court where he believed the trusses had been installed on the property.

As evidence that the trusses were built and delivered, STTC offered an invoice stating that the ship date was October 13, 2009, and the total due was $1,874.89. The invoice is addressed to Dream Homes and contains the Calle Pluton address and the property's legal description. Klinger claimed that payment was due the day after the trusses were delivered. According to Klinger, he attempted to collect the balance due from Dream Homes by making "numerous calls" to Dream Homes. Klinger also claimed that he contacted the owner about the bill.[4]

Klinger testified that while attempting to locate the owner of the property, he "r[a]n into" Maria Gloria, and she informed him that she had entered into a contract with Dream Homes to build a house on the property. Klinger stated that Maria Gloria showed him her contract with Dream Homes. According to Klinger, Maria Gloria had "apparently given [Dream Homes] a cash payment of $30,000 almost a year prior to the house being started," which Klinger thought was "rather strange." After talking to someone at Dream Homes who told Klinger Maria Gloria was responsible for paying the bill to STTC, Klinger filed a lien on the property. The trial court admitted a copy of the lien filed by Klinger. The lien listed Lara as the owner of the Calle Pluton property and stated that he was personally liable for payment of the trusses pursuant to a contract

construction of the roof of residential and commercial property."

[4] At this point, Lara interrupted Klinger, and stated, "He never contacted me, Your Honor."

3

with Dream Homes. The trial court admitted an internet printout from the Cameron County Appraisal District showing that Lara is listed as the titleholder of the Calle Pluton property.

Later on cross-examination, Klinger stated that the trusses were delivered to "Lot 87, Block A, Colonia Galaxia" on October 13, 2009. This is the legal description of the Calle Pluton property. However, Klinger admitted that he could not remember the address where the trusses were delivered. Klinger stated that he did not have the receipt from the company that built and delivered the trusses, but he claimed that he paid for the fabrication of the trusses.

Klinger testified that although he did not personally receive an order for the trusses, someone at STTC took the order, and he filled it. Klinger was not able to identify who it was from Dream Homes that placed the order for the trusses or who took the order for STTC. Klinger simply stated that one of STTC's sales truss technicians took the order. Klinger admitted that STTC did not enter into a contract with Dream Homes to provide the trusses.[5] However, Klinger later stated that the agreement with Dream Homes was verbal. Klinger did not enter into that verbal agreement with Dream Homes, and the STTC representative who allegedly entered into the verbal agreement did not testify at the bench trial. Klinger stated that "[t]he agreement [was] that [STTC] would be paid soon after the materials were delivered." However, Klinger admitted that he did not have any documentation showing that Dream Homes entered an agreement to pay for the trusses. Klinger claimed that the invoice showed the terms of the

---

[5] Klinger stated that STTC typically did not enter contracts with "new customers or one-time builders, if it's supposed to be a COD or cash deal . . . ." Klinger claimed that the deal with Dream Homes was a "cash deal" in this case.

4

agreement with Dream Homes. Klinger explained that he had no written proof that someone from Dream Homes approved the estimate for the trusses or authorized the delivery. Klinger testified that he could not prove the terms of the agreement with Dream Homes, "Other than the fact that he [representative from Dream Homes] was sent—he was given that amount before he approved the order." When asked why STTC had not sued Dream Homes, Klinger stated he did not know and to ask his attorney.

Maria Gloria testified that she entered into a contract with Dream Homes to build a home on the Calle Pluton property. Maria Gloria acknowledged that she received an invoice from STTC stating that there was an outstanding balance for delivery of the trusses. Maria Gloria claimed that she gave the invoice to the representative from Dream Homes. On re-direct examination, Maria Gloria stated that she resides at 1329 Pluton. The trial court admitted a printout from the Cameron County Appraisal District showing that Maria Gloria owns the property on Camellia Drive.

Lara testified that he understood that when people entered into an agreement, "they make some kind of form, a written contract, that way they can back up what they're saying and how much the agreement was for." According to Lara, in this case, STTC did not have any proof showing when the parties agreed that payment for the trusses would be made. Lara found it unbelievable that someone would "just drop[] off equipment on the side of the road and just leave." Lara stated that he did not enter into a contract with Dream Homes or with STTC.

During closing argument, STTC claimed that there is no rule requiring a contract between STTC and Lara. However, STTC acknowledged that "[t]here is only a contract

5

or an agreement between the homeowner and the contractor, which we have as Exhibit No. 1." Lara argued that "there is no signature approving anybody's decision to actually make this—these trusses." According to Lara, without the agreement, there is nothing to prove that Dream Homes agreed to the terms as set out in STTC's invoice. Lara reiterated that "[t]here is no contract where somebody placed the order. There is no receipt where somebody received the material. And it's in doubt whether the agreement was to pay like they're saying it was paid because there is no signature."

After the bench trial, the trial court rendered a take nothing judgment in favor of Lara. At the request of STTC, the trial court issued the following findings of fact and conclusions of law:

### Findings of Fact

1.) Dream Homes contracted with Maria [Gloria] Lara to build a home for her at 1329 Calle Pluton.

2.) Dream Homes ordered trusses from [STTC].

3.) [STTC] specially fabricated trusses for Dream Homes on this project.

4.) There was no contract between [STTC] and Dream Homes.

5.) There is no delivery address on the Delivery List (Exhibit 1).

6.) Driver of delivery truck did not know the delivery address and contacted plaintiff Klinger.

7.) No one was present at site where trusses were delivered except for driver and Klinger.

8.) Mr. Klinger did not know the address the trusses were delivered to.

9.) [Lara] owns at least two homes in Brownsville.

10.) [Maria Gloria] Lara did not retain any of the contract prices for the home she contracted to have built.

6

. . . .

12.) The plaintiff['s] requests for admissions were sent to [Lara] or Maria [Gloria] Lara regarding trusses in question and were the only documents sent certified or registered that were introduced in evidence.

13.) Verbal attempts were made to contact [Lara] and Maria [Gloria] Lara by the plaintiff.

14.) The notice of lien was filed with Cameron County on the 20th day of the month following delivery of trusses he fabricated.

15.) There was never a clear indication as to exactly what home exhibit[] 3 and exhibit[] 4 depicted.

Conclusions of Law

1.) Subchapter K of Chapter 53 of the Property Code applies to Residential construction projects.

2.) 53.251 states that a person must comply with subchapter to perfect a lien that carries from a claim resulting from a residential construction project.

3.) 53.252 states a claimant must give the owner notice by registered or certified mail no later than the 15th day of the second month following each month in which all or part of claimants specifically fabricated material was delivered.

4.) 53.254 to file a lien on a homestead, the person who is to furnish the material must execute a written contract setting forth terms of the agreement.

5.) 53.056 requires written notice by certified or registered mail to the owner of the property by the claimant.

6.) As a result of there being no evidence of certified mail or registered mail giving notice to [Lara] of the claim the lien was not perfected and thereby invalid.

7.) As a result of there not being a contract for the trusses the lien on the homestead is not enforceable.

8.) The testimony of Mr. Klinger did not establish exactly where the trusses were delivered because it was unclear.

This appeal followed.

## II. ENTITLEMENT TO THE LIEN

By their first four issues, STTC appears to argue that STTC proved as a matter of law that it was entitled to a lien on Lara's property interest because he was personally liable for payment of the trusses.[6] Lara argues, on the other hand, that because he was not a party to the original contract between Dream Homes and Maria Gloria, he is not personally liable for payment of the trusses. We agree with Lara.

### A. Standard of Review and Applicable Law

Findings of fact in a bench trial have the same force and effect as findings by the jury. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Pulley v. Milberger*, 198 S.W.3d 418, 426 (Tex. App.—Dallas 2006, pet. denied). If there is any evidence of a probative nature to support the trial court's judgment, we will not set it aside, and if there is any evidence in the record to sustain the trial court's findings, we may not substitute our findings of fact for those of the trial court. *Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607, 609 (Tex. 1979); *Harlingen Irrigation Dist. Cameron County No. 1 v. Caprock Commc'ns Corp.*, 49 S.W.3d 520, 529 (Tex. App.—Corpus Christi 2001, pet. denied). We review the trial court's findings of fact by the same standards we use in reviewing the sufficiency of the evidence supporting a jury's answers. *Caprock Commc'ns Corp.*, 49 S.W.3d at 529.

---

[6] STTC does not state whether it challenges the legal or factual sufficiency of the trial court's findings of fact. STTC generally states that the "take nothing judgment is against the great weight and preponderance of the evidence"; however, in its prayer, STTC requests that we render judgment in its favor. Furthermore, STTC has not stated a standard of review to be applied in this case. *See* TEX R. APP. P. 38.1(i).

If a party with the burden of proof challenges the legal sufficiency of an adverse finding, we must determine whether the complaining party has demonstrated on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). In a "matter of law" challenge, we "first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary." *Id.* If there is no evidence to support the finding, we will examine the entire record in order to determine whether the contrary proposition is established as a matter of law. *Id.* We will sustain the issue if the contrary proposition is conclusively established. *Id.* The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

"In any foreclosure suit, the plaintiff must establish the existence of a valid obligation owing to him by the defendant because foreclosure is merely a method of assuring payment of the plaintiff's claim." *Gibson v. Bostick Roofing & Sheet Metal*, 148 S.W.3d 482, 493 (Tex. App.—El Paso 2004, no pet.) (citing *Hagan v. Anderson*, 506 S.W.2d 298, 302 (Tex. Civ. App.—San Antonio 1973, writ ref'd n.r.e.)). A person is entitled to a lien if he furnishes or fabricates materials for the construction of a house and "the person labors, specially fabricates the material, or furnishes the labor or materials under or by virtue of a contract with the owner or the owner's agent, trustee, receiver, contractor, or subcontractor." TEX. PROP. CODE ANN. § 53.021 (West 2007). A lien may not be fixed on an owner's property "where the contract for labor, materials or construction is not made with the owner or his duly-authorized agent." *Gibson*, 148

9

S.W.3d at 494 (citing *Kelly v. Heimer*, 312 S.W.2d 430, 434 (Tex. Civ. App.—San Antonio 1958, writ ref'd n.r.e.)). Furthermore, in cases where a contract for materials, labor, or construction is not made with the owner of the property or his duly-authorized agent, the owner may not be held personally liable for the materials, labor, or construction. *Id.* "Our courts have long held that a mechanic's lien attaches to the interest of the person contracting for construction. Thus, if a lessee contracts for construction, the mechanic's lien attaches only to the leasehold interest, not to the fee interest of the lessor. Similarly, a mechanic's lien may attach to an equitable interest of one holding an option on land, but the lien is extinguished if the fee is not obtained by the optionee." *Id.* at 495 (citing *Diversified Mtg. Investors v. Lloyd D. Blaylock Gen. Contractor*, 576 S.W.2d 794, 805 (Tex. 1978)).

## B.    Analysis

STTC does not challenge the trial court's finding of fact that Maria Gloria entered the contract with Dream Homes to build a home on the Calle Pluton property. Moreover, this finding is supported by the evidence admitted at trial. The only contract admitted shows that Maria Gloria entered the contract with Dream Homes and that Lara did not sign the contract. At no time did STTC contend that Maria Gloria was Lara's duly-authorized agent.

To be entitled to a lien on Lara's interest in the property, STTC was required to prove that it provided the trusses under or by virtue of a contract with Lara or his agent, trustee, receiver, contractor, or subcontractor. *See* TEX. PROP. CODE ANN. § 53.021. In this case, the evidence established that Lara did not enter into a contract with Dream Homes to build the home for which STTC allegedly provided the trusses, and STTC

10

neither alleged nor proved that Maria Gloria was Lara's duly-authorized agent. STTC failed to prove that it provided the trusses by virtue of a contract with Lara, his agent, trustee, receiver, contractor, or subcontractor. Therefore, STTC did not prove as a matter of law that Lara was personally liable for payment of the trusses and that it was entitled to a lien on Lara's interest in the Calle Pluton property. *See Ray*, 576 S.W.2d at 609; *Harlingen Irrigation Dist. Cameron County No. 1*, 49 S.W.3d at 529; *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 741 (Tex. 2005) (providing that a direct contractual relationship is required between the owner of the property and the mechanic, materialman, or artisan). The mechanic's lien could only attach to the interest of the party contracting for the labor, materials, or construction—Maria Gloria in this case. Accordingly, we conclude that the trial court properly rendered a take-nothing judgment in favor of Lara. We overrule STTC's first four issues.[7]

### III. ATTORNEY'S FEES

By its fifth issue, STTC contends that it was entitled to recover attorney's fees from Lara. However, we have concluded that the trial court properly denied STTC's cause of action against Lara; therefore, STTC is not entitled to attorney's fees. *See Rodgers v. RAB Invs., Ltd.*, 816 S.W.2d 543, 551 (Tex. App.—Dallas 1991, no writ) (providing that to obtain an award of attorney's fees, a party must prevail on a cause of action for which attorney's fees are recoverable). We overrule STTC's fifth issue.

---

[7] Because Lara could not be held personally liable for payment of the trusses in this case, STTC's issues regarding whether it provided Lara proper notice of the bill and whether the trial court erroneously found that notice was required pursuant to the homestead rules are not dispositive of this appeal. *See* TEX. R. APP. P. 47.1.

11

## IV.    CONCLUSION

We affirm the trial court's judgment.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
31st day of August, 2011.